UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BILLI-JO CLUNEY, individually and as Personal Representative for the Estate of James M. Cluney, Sr., <br><br>    Plaintiffs, <br><br> v. <br><br>BROWNELLS, INC., and MDX CORP., and FEDEX CORPORATE SERVICES, INC. Defendants, <br><br>    Defendants. | Case No.: 24-cv-00207-LEW |

**DEFENDANT BROWNELLS INCORPORATED'S MOTION TO DISMISS**

Defendant Brownells Incorporated ("Brownells") respectively moves to dismiss Plaintiff's Complaint and all claims against it with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**SUMMARY OF THE ARGUMENT**

Plaintiff in this case attempts to do exactly what Congress has forbidden: to blame sellers of component parts for firearms and ammunition for the harm caused by a third party who criminally misused them to cause Plaintiff harm. Congress's complete prohibition of civil actions attempting to blame firearm industry members for harm caused by the criminal misuse of their products by third parties applies in full force here. Even were that not the case, well-established principles of Maine tort law independently require the dismissal of Plaintiff's claims.

                 ***

Plaintiff is the surviving spouse and representative of the estate of a man murdered on May 6, 2022 by Atilio Delgado ("Shooter"), a sixteen year old she and her spouse were informally

fostering, using a homemade firearm ("Subject Firearm").  Plaintiff contends that the online retail dealers who sold component parts that the Shooter used to manufacture the Subject Firearm and the ammunition he used in it are liable for the damages the Shooter caused.  Those claims must be immediately dismissed because they are prohibited by a federal immunity statute, the Protection of Lawful Commerce in Arms Act ("PLCAA"), which prohibits a civil action against sellers of component parts of a firearm and ammunition for damages or other relief resulting from the criminal or unlawful misuse of a firearm, ammunition, or component parts of a firearm by a third party.  It does not diminish the atrocious nature of the Shooter's crime to acknowledge, as the PLCAA demands, that he—not sellers of component parts of a firearm and ammunition—was solely responsible for the damages caused by his own acts.  The PLCAA's protections, where they apply, are absolute—the statute prohibits covered suits from being filed in any state or federal court.

In addition to being barred by the PLCAA, Plaintiff's claims should also be dismissed because they fail to state a claim upon which relief can be granted pursuant to Maine law for two additional and independent reasons.  First, Plaintiff's claims fail because Maine law does not impose a duty on a retail dealer to protect members of the public from harm caused by the acts of a third party using products it sold.  Second, Plaintiff's claims fail because she cannot establish causation because her damages were caused by the Shooter's criminal conduct.  Finally, Plaintiff's claims for punitive damages should be dismissed because they do not constitute an independent basis on which relief can be granted, and the conclusory allegations in the Complaint do not come close to meeting the high threshold to justify the recovery of punitive damages as a matter of law.

## BACKGROUND

Based on the allegations in the Complaint, which are assumed to be true for purposes of this Motion only, in or around 2018 or 2019, Plaintiff Billi-Jo Cluney and her husband, James. M. Cluney, Sr. ("Mr. Cluney") began to informally foster the Shooter and his brother, in addition to raising their own two children. Compl. ¶¶ 87–88. In late 2021, the Shooter used pre-paid gift cards to make four online purchases from defendant MDX Corp. ("MDX") and Brownells, which provided him with "all the necessary components to build a handgun and to load it with handgun ammunition." *Id.* ¶¶ 94–100. The products the Shooter ordered from MDX and Brownells were shipped through, and delivered by, FedEx. *Id.* ¶ 355. On October 10, 2021, the Shooter made one purchase in the amount of $434.74, consisting of "parts to construct a handgun," from MDX. *Id.* ¶ 95. The Shooter made three purchases from Brownells, which included "handgun ammunition." *Id.* ¶ 96–99. The three purchases from Brownells were each made using a "OneVanilla pre-paid Visa gift card with the 'issued to' name of CARDHOLDER with one of the following numbering sequences:" 4941 60504911 8615 Exp: 12/28; 4941 60504622 1578 Exp: 12/28; and 4941 60500295 3743 Exp: 12/28. *Id.* ¶¶ 96–98. As specifically alleged in the Complaint, the three purchases from Brownells were as follows: (1) a purchase in the amount of $69.01 on November 9, 2021; (2) a purchase in the amount of $26.81 on November 10, 2021; and (3) a purchase in the amount of $52.12 on December 18, 2021. *Id.* ¶¶ 96–99. The Complaint does not specifically identify what the Shooter purchased in the above transactions, only that they "included the purchase of handgun ammunition." *Id.* ¶ 99. The Complaint claims that Brownells sold the Shooter "a handgun, a handgun frame, handgun parts, and/or handgun ammunition." *Id.* ¶ 122 (emphasis added).

As set forth in the July 8, 2024 Declaration of Jon Pettlon ("Pettlon Decl."), the above three purchases were the only times that Brownells sold products to the Shooter, and the purchases included only magazines and ammunition. Specifically, the Shooter purchased from Brownells one KCI Glock 9mm 17 round magazine and one KCI Glock 9mm 33 round magazine (collectively the "Magazines"), and one box of V-Crown 9mm ammunition and one box of Magtech 9mm ammunition (collectively the "Ammunition"). Pettlon Decl. ¶ 6. Brownells did not sell a handgun, a handgun frame, or any handgun parts other than the Magazines to the Shooter. *Id.* ¶ 14. The Shooter manufactured the Subject Firearm using the "parts to construct a handgun" he had purchased from MDX and the Magazines, and loaded it with the Ammunition. Compl. ¶¶ 100, 109–10. Plaintiff and Mr. Cluney were aware that the Shooter had the Subject Firearm and, despite the fact that he refused their demand to surrender it to them, they never contacted law enforcement. Compl. ¶¶ 108–12. On May 6, 2022, the Shooter intentionally shot Mr. Cluney six times with the Subject Firearm, killing him. *Id.* ¶ 115. The Shooter has been charged with "intentional or knowing murder." *Id.* ¶ 117.

Based on the above, Plaintiff raises claims against Brownells for negligence, negligence-based wrongful death, negligence-based wrongful death—conscious pain and suffering, negligence-based loss of consortium, punitive damages for negligence, and punitive damages for negligence-based wrongful death, and seeks to recover compensatory and punitive damages and other relief.

## STANDARD OF REVIEW

In order to survive a motion to dismiss, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp v. Twombley*, 550 U.S. 544, 555 (2007). Instead, a complaint must allege "sufficient

4

factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the court should grant the motion to dismiss. *Scholefield v. Riverview Psychiatric Ctr.*, No. CIVIL 8-391-B-W, 2009 WL 1605398, at *2 (D. Me. June 5, 2009), *aff'd sub nom.*, 2009 WL 1883517 (D. Me. June 30, 2009).

In evaluating a motion to dismiss, a court may consider "documents outside of the complaint" that are "expressly incorporated" in the complaint, "central to plaintiff's claim," and/or "sufficiently referred to in the complaint." *Coffin v. Bowater Inc.*, 224 F.R.D. 289, 290 (D. Me. 2004) (citing *Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)); *see also In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003) (Rule 12(b)(6) "principles require us to consider not only the complaint but also matters fairly incorporated within it"); *Ramirez v. DeCoster*, No. 2:11-CV-00294-JAW, 2012 WL 2367179, at *9 (D. Me. June 21, 2012) (explaining that the court may consider "documents central to a plaintiff's claims, and documents referred to in the complaint without deciding the motion under the summary judgment standard").

# ARGUMENT

I.  **PLAINTIFF'S CLAIMS AGAINST BROWNELLS MUST BE IMMEDIATELY DISMISSED PURSUANT TO THE PLCAA.**

   A.  **The Protection of Lawful Commerce in Arms Act Provides Immunity to Dealers from Lawsuits Seeking to Hold Them Liable for the Criminal Misuse of Firearms and Ammunition by Third Parties.**

The PLCAA, which was enacted on October 26, 2005, prohibits the institution of a "qualified civil liability action" in any state or federal court. 15 U.S.C. § 7902(a). Because the PLCAA provides complete and substantive immunity to suit, not just a defense from liability, whether PLCAA immunity applies must be decided at the earliest available opportunity. *See*, *e.g.*, *In re Academy, Ltd.*, 625 S.W.3d 19, 35-36 (Tex. 2021) (unanimously granting petition for mandamus and holding that requiring defendant to present a defense on the merits to a case barred by the PLCAA would defeat the substantive immunity provided by the statute).

One of the stated purposes of the PLCAA is to "prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products . . . for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended." *Id.* § 7901(b)(1). Congress made a number of findings regarding the necessity for the PLCAA, including:

- Lawsuits have been commenced against manufacturers, distributors, dealers and importers of firearms that operate as designed and intended which seek money damages and other relief for the harm caused by the misuse of firearms by third parties, including criminals.

- The manufacture, importation, possession, sale, and use of firearms and ammunition in the United States are heavily regulated by Federal, State, and local laws. Such Federal laws include the Gun Control Act of 1968, the National Firearms Act, and the Arms Export Control Act.

- Businesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products that have been shipped or transported in interstate or foreign commerce are not,

> and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended.

15 U.S.C. §§ 7901(a)(3)–(5).  Based upon its findings and the purposes stated therein, Congress enacted the PLCAA to prohibit qualified civil liability actions, such as this case, from being "brought in any Federal or State court."  *Id.* § 7902(a).

### B.   This Case is a Qualified Civil Liability Action.

As defined by the PLCAA, and subject to six limited exceptions, a "qualified civil liability action" is a:

> civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product or a trade association, for damages, punitive damages, injunctive or declaratory relief, or penalties or other relief resulting from the criminal or unlawful misuse of a qualified product by the person or a third party . . . .

15 U.S.C. § 7903(5)(A).  Based on the allegations in the Complaint, this case is a civil action brought by a person (Plaintiff) against a seller (Brownells) of qualified products (the Magazines and Ammunition) for damages and other relief based on the criminal use of (the murder of Mr. Cluney) of the qualified products by a third party (the Shooter).  *See generally* Compl.

#### 1.   Brownells is a Seller.

The PLCAA defines a "seller" in relevant part, both as a "dealer (as defined in section 921(a)(11) of Title 18) who is engaged in the business as such a dealer in interstate or foreign commerce and who is licensed to engage in business as such a dealer under chapter 44 of Title 18," and as a "person engaged in the business of selling ammunition (as defined in section 921(a)(17)(A) of title 18) in interstate or foreign commerce at the wholesale or retail level."  15 U.S.C. §§ 7903(6)(B) & (C).  Pursuant to 18 U.S.C. § 921(a)(11)(A), a "dealer" is defined as "any

person engaged in the business¹ of selling firearms at wholesale or retail." Based on the allegations in the Complaint, Brownells is "seller" for purposes of the PLCAA. Compl. ¶¶ 9, 12, 46–48, 96–100.

## 2. The Magazines and Ammunition are Qualified Products.

The PLCAA defines a "qualified product" as a firearm (as defined in subparagraph (A) or (B) of section 921(a)(3) of title 18), including any antique firearm (as defined in section 921(a)(16) of such title), or ammunition (as defined in section 921(a)(17)(A) of such title), or a component part of a firearm or ammunition, that has been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4). Pursuant to 18 U.S.C. §§ 921(a)(3)(A), a firearm is defined as "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." Pursuant to 18 U.S.C. § 921(a)(17(A), "ammunition" is defined as "ammunition or cartridge cases, primers, bullets, or propellent powder designed for use in any firearm." Accordingly, based on the allegations in the Complaint, the Subject Firearm and the Ammunition are qualified products for purposes of the PLCAA.

The term "component part of a firearm" is not defined in the PLCAA. The term "component" is defined as a "part that combines with other parts to form something bigger."² A "part" is defined as a "separate piece of something, or a piece that combines with other pieces to

---

¹ The PLCAA defines the term "engaged in the business" with reference to 18 U.S.C. § 921(a)(21). 15 U.S.C. § 7903(1). The term "engaged in the business," relative to a dealer, is defined as a "person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms . . . ." *Id.* § 921(a)(21)(C).

² Cambridge Dictionary, Dictionary, Component, available at https://dictionary.cambridge.org/us/dictionary/english/component (last visited June 24, 2024).

8

form the whole of something."[3]  Courts have previously held that magazines and other parts of a firearm are "component parts" for purposes of the PLCAA.  *See In re Academy, Ltd.*, 625 S.W.3d at 29 (magazine is qualified product for purposes of PLCAA); *see also Prescott v. Slide Fire Sols., LP*, 341 F. Supp. 3d 1185. 1189 (D. Nev. 2018) (aftermarket stock is qualified product under PLCAA).  In addition, courts have held that as component parts of firearms, magazines are "arms" for purposes of the Second Amendment.  *See, e.g.*, *Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1276 (N.D. Cal. 2014), *aff'd*, 779 F.3d 991 (9th Cir. 2015) (holding that magazines are covered by the Second Amendment because "they are integral components to vast categories of guns"); *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, 910 F.3d 106, 116 (3d Cir. 2018), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

        **3.**    **The Complaint Seeks Damages and Other Relief Resulting from the Criminal Use of Qualified Products by a Third Party.**

Based on the allegations in the Complaint, Plaintiff is seeking damages and other relief arising from the criminal use of the Subject Firearm and Ammunition by the Shooter who used them to intentionally shoot and murder Mr. Cluney in violation of Me. Rev. Stat. tit. 17-A, §§ 201 & 208.  Accordingly, the alleged damages and other relief sought by Plaintiff resulted from the criminal use (the intentional shooting and murder of Mr. Cluney) of qualified products (the Subject Firearm and Ammunition) by a third party (the Shooter).  The claims in the Complaint therefore constitute a qualified civil liability action, from which the PLCAA provides Brownells with complete immunity by prohibiting this action from being "brought in any Federal or State court," unless one of the statute's narrow exceptions applies.

---

[3] Cambridge Dictionary, Dictionary, Part, available at https://dictionary.cambridge.org/us/dictionary/english/part (last visited June 24, 2024).

9

## C. Plaintiff's Claims Do Not Satisfy Any Exceptions to the PLCAA.

There are six narrow categories of claims that the PLCAA does not bar because they are excluded from the definition of a qualified civil liability action. Based on the allegations in the Complaint, the only potentially relevant exception here is the predicate exception set forth in 15 U.S.C. § 7903(5)(A)(iii). That provision excludes from the definition of a prohibited qualified civil liability action an "action in which a . . . seller [of firearms, ammunition and their component parts] knowingly violated a state or federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought . . . ." 15 U.S.C. § 7903(5)(A)(iii). There are no exceptions to the PLCAA that would allow Plaintiff's claims against Brownells, which are all based on general negligence theories, to proceed without the predicate exception being satisfied. *See* 15 U.S.C. § 7903(5)(A); *see, e.g.*, *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1135 (9th Cir. 2009) (PLCAA bars general negligence claims); *Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 322 (Mo. 2016) ("PLCAA expressly preempts all general negligence actions seeking damages resulting from the criminal or unlawful use of a firearm"); *Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 386 (Alaska 2013) ("reading a general negligence exception into the statute would make the negligence per se and negligent entrustment exceptions a surplusage").

Plaintiff alleges that Brownells violated numerous provisions of the Gun Control Act, specifically 18 U.S.C. §§ 922(a)(2), (b)(1)–(2), (c)(1)–(3), (e), and (f)(1)–(2). The majority of these provisions apply only to firearms and are irrelevant to Brownells's sale of the Magazines and Ammunition.[4] Although the Complaint alleges that Brownells sold the Shooter "a handgun, a

---

[4] 18 U.S.C. § 922(a)(2) relates to the shipment of firearms in interstate commerce. 18 U.S.C. § 922(b)(2) relates to the sale or delivery of a firearm to a person in a state where its purchase or

10

handgun frame, handgun parts, <u>and/or</u> handgun ammunition," Compl. ¶ 122 (emphasis added), the invoices for the products sold to the Shooter demonstrate that it sold only the Magazines and Ammunition, which is consistent with the Complaint's allegations. Pettlon Decl. ¶¶ 6-9, Exs. 1-3. These documents are properly considered in connection with this Motion because they are incorporated into and/or sufficiently referenced in the Complaint. *See Coffin*, 224 F.R.D. at 290. Relative to the Magazines and Ammunition that Brownells sold to the Shooter, Plaintiff alleges that it "sold handgun ammunition without abiding by the conditions lawfully required for the commercial sale of handgun ammunition without conducting background checks to verify that the purchaser is eligible to possess ammunition, through prohibition or age, and without maintaining the types of records that FFLs selling ammunition must maintain." Compl. ¶ 47. Plaintiff does not claim that Brownells violated any statutes by selling the Magazines, and nothing in federal or Maine law prohibited their sale to the Shooter.

Relative to the Ammunition, neither federal nor Maine law require a background check when selling ammunition, nor do they require any records to be kept regarding the sale of the Ammunition. Unlike with the sale of firearms, there is no requirement to review a purchaser's identification, or make any inquiry into whether the purchaser is prohibited from purchasing and

---

possession by the recipient would be illegal. 18 U.S.C. § 922(c)(1)–(3) governs requirements to sell a firearm to a person who does not appear in person at the licensed premises of the federal firearms licensee. Although 18 U.S.C. § 922(e) is applicable to the shipment of ammunition, the Complaint does not contain any factual allegations that Brownells did anything to violate it. 18 U.S.C. §§ 922(f)(1)–(2) applies only to common carriers, and Section 922(f)(2) also applies only to firearms. Maine Rev. Stat. tit. 17-A, § 395 applies only to the sale and transfer of firearms, not the Magazines and Ammunition, and Maine Rev. Stat. tit. 17-A, § 554-B governs the transfer of handguns to minors. Plaintiff also makes a conclusory allegation that Brownells violated 18 U.S.C. § 923, which is the entirety of the GCA related to licensing, including record-keeping, but does not plead any factual allegations regarding how Brownells allegedly violated that provision and, as explained above, there are no record keeping requirements applicable to the Magazines or Ammunition.

11

possessing ammunition. The only basis on which the Complaint alleges that the Shooter was not qualified to purchase ammunition was based on his age.

A provision in the GCA, 18 U.S.C. § 922(b)(1), states in relevant part that it "shall be unlawful for any . . . licensed dealer . . . to sell or deliver . . . any . . . ammunition to any individual who the licensee <u>knows or has reasonable cause to believe</u> is less than eighteen years of age, and, if the . . . ammunition is other than . . . ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age . . . ." (Emphasis added). Although it was subsequently determined that the Shooter was sixteen years of age at the time he purchased the Ammunition, there are no factual allegations in the Complaint suggesting that Brownells had actual knowledge that he was a minor, or that it had reasonable cause to believe that he was a minor.[5] Rather, Plaintiff claims that it was negligent for Brownells to have sold the Ammunition to the Shooter because he was a minor. 18 U.S.C. § 922(b)(1) cannot be violated based on merely negligent conduct. Further, the predicate exception to the PLCAA can be satisfied only by the knowing violation of a statute. Accordingly, any arguments that it was negligent for Brownells not to have done more to ensure that the Shooter was of legal age to purchase the Ammunition has no effect on the PLCAA's requirement that Plaintiff's claims be dismissed pursuant to the immunity it provides.

---

[5] When attempting to add age restricted items, such as the Ammunition, to the cart using Brownells' website a popup would appear requiring the purchaser to advise whether he or she satisfied the applicable age requirement. If the purchaser represented that they were of legal age, the product would be added to the cart. If they indicated that they were not of legal age, the product would not be added to the cart. Although Brownells required the Shooter to verify that he was of legal age to purchase the Ammunition in this manner, it is ultimately irrelevant to this Motion because there was no statutory requirement for it to do so.

12

## II. THE COMPLAINT SHOULD ALSO BE DISMISSED BECAUSE BROWNELLS DID NOT BREACH ANY DUTY TO PLAINTIFF.

This Court should also dismiss Plaintiff's claims against Brownells because the Complaint fails to allege facts showing that Brownells breached any duty owed to Plaintiff, a necessary element of each of her negligence-based claims.[6] The existence of a duty is a question of law. *Baker v. Goodman*, 442 F. Supp. 3d 366, 374 (D. Me. 2020) (citing *Brown v. Delta Tau Delta*, 2015 ME 75, ¶ 9, 118 A.3d 789, 791 (Me. 2015)).

Significantly, the "Maine Supreme Judicial Court has reiterated the general, no-duty rule"—that "absent a special relationship,[7] the law imposes no duty to act affirmatively to protect someone from danger unless the dangerous situation was created by the defendant," and that "[o]nly when there is a 'special relationship,' may the actor be found to have a common law duty to prevent harm to another, caused by a third party." *Baker*, 442 F. Supp. 3d at 374 (quoting *Belyea*, 2010 ME 75 at ¶ 9). In other words, "[t]here is simply no duty so to control the conduct

---

[6] "To state a negligence claim in the state of Maine, a plaintiff must establish the following elements: 'a duty owed, a breach of that duty, and an injury . . . that is proximately caused by a breach of that duty.'" *Baker v. Goodman*, 442 F. Supp. 3d 366, 374 (D. Me. 2020) (quoting *Belyea v. Shiretown Motor Inn, LP*, 2010 ME 75, ¶ 6, 2 A.3d 276, 278 (Me. 2010)); *see also Page v. Amtrak, Inc.*, 168 F. Supp. 3d 337, 342 (D. Me.) ("wrongful death claim lies in negligence'') (quoting *Bell ex rel. Bell v. Dawson*, 2013 ME 108, ¶ 17, 82 A.3d 827, 831–32 (Me. 2013), *aff'd*, 664 F. App'x 12 (1st Cir. 2016); *Brown v. Crown Equip. Corp.*, 2008 ME 186, ¶ 23, 960 A.2d 1188, 1195 (Me. 2008) ("loss of consortium claims necessarily arise from the same negligent act as the underlying tort claims and are therefore subject to the same rules and limitations"; "loss of consortium claim is a derivative claim").

[7] Maine law limits such special relationships to four kinds: "'(1) common carriers and their passengers; (2) innkeepers and their guests; (3) possessors of land and members of the public who are their invitees; and (4) those who are required by law to take physical custody of another or who voluntarily do so, such as to deprive the other of his normal opportunities for protection.'" *Baker*, 442 F. Supp. 3d at 377 (quoting *In Dragomir v. Spring Harbor Hospital*, 2009 ME 51, ¶ 18, 970 A.2d 310 (Me. 2009). Additionally, Maine law also imposes a duty where a fiduciary relationship exists between the parties. *Baker*, 442 F. Supp. 3d at 377 (citing *Mastriano v. Blyer*, 2001 ME 134, ¶ 19, 779 A.2d 951 (Me. 2001)).

of a third person as to prevent him from causing physical harm to another unless . . . a special relation exists." *Id.* (quoting *Belyea*, 2010 ME 75 at ¶ 9).

Maine law is further clear that there is no duty for "a retailer not to sell a product" even where harm is foreseeable. *Baker*, 442 F. Supp. 3d at 376–77. Indeed, "neither the Maine Legislature nor the Maine Supreme Judicial Court has suggested that Maine tort law should be expanded to protect retail customers from themselves, much less from potential harm from others." *Id.* at 380. Brownells's sale of the Magazines and Ammunition fall plainly within the category of retail transactions where Brownells, as a retailer, owed no duty to prevent harm that could be caused by a third party's actions using the products sold. Plaintiff has not alleged any facts to demonstrate the existence of one of the very few limited circumstances that could create a special relationship between herself and Brownells under Maine law that could justify the imposition of a duty owed by Brownells. Accordingly, as Maine law is clear that Brownells owed no duty to Plaintiff to prevent the Shooter from murdering Mr. Cluney, all of Plaintiff's claims against Brownells should be dismissed.

### III. THE COMPLAINT SHOULD BE DISMISSED ON THE ADDITIONAL GROUND THAT PLAINTIFF CANNOT ESTABLISH CAUSATION.

The Court should further dismiss all of Plaintiff's claims against Brownells for the independent reason of lack of causation. Legal cause is a question for the Court. The court can issue "judgment as a matter of law" on the issue of causation where a plaintiff fails to "show more than a mere possibility of proximate cause," such as that requiring "speculation or conjecture." *Johnson v. Carleton*, 2001 ME 12, ¶ 12, 765 A.2d 571, 575 (Me. 2001.)

A "defendant's negligent conduct is actionable only if it is the legal or proximate cause of harm to another." *Clement v. United States*, 980 F.2d 48, 53 (1st Cir. 1992). An "examination of causation requires a two-part inquiry, which asks whether the negligent act played a 'substantial

part in . . . causing the injury' and, if so, whether the injury was a 'reasonably foreseeable' result of the act." *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 29 (1st Cir. 2012) (quoting *Crowe v. Shaw*, 2000 ME 136, ¶ 10, 755 A.2d 509, 512 (Me. 2000)). "A consequence of negligence is reasonably foreseeable if the negligence has created a risk which might *reasonably be expected* to result in the injury or damage at issue." *Merriam v. Wanger*, 2000 ME 159, ¶ 9, 757 A.2d 778, 781 (Me. 2000) (emphasis added). Further, proximate causation only exists where an act is "unbroken by an efficient intervening cause." *Id.* at 780.

Here, Plaintiff's claims against Brownells necessarily fail for lack of proximate causation. Brownells's sale of the Magazines and Ammunition cannot possibly be said to "reasonably be expected to result" in the murder of Mr. Cluney. *Id.* at ¶ 9. If that were the case, anytime any product that could result in harm is sold, a retailer automatically would be deemed a proximate cause if it was later used in a crime to cause harm. That is not the law, nor does it make logical sense. The Shooter's murder of Mr. Cluney constitutes an intervening cause that broke the chain of any causation between Brownells's sale of the Magazines and Ammunition and Plaintiff's damages.

Adding a further break in any possible causal link to Brownells is the fact that Plaintiff knew the Shooter had the Subject Firearm before he murdered Mr. Cluney. Compl. ¶¶ 101-02, 108-12. Despite knowing that Shooter had assembled and was in illegal possession of the Subject Firearm, possessed it unsecured in the home he shared with Plaintiff's children, was bringing the Subject Firearm to school, and refused to surrender it to her, Plaintiff chose not to contact law enforcement about the issue. *Id.* Had she done so, the Shooter would almost certainly not have been able to use the Subject Firearm to murder Mr. Cluney. Accordingly, the Court should dismiss Plaintiff's claims against Brownells for lack of causation.

15

### IV. PLAINTIFF HAS NOT ALLEGED ANY FACTS THAT SUPPORT PUNITIVE DAMAGES.

This Court should also dismiss Plaintiff's claims for punitive damages[8] for the additional reason that they have failed to plead facts establishing the required malice. Pursuant to Maine law, "punitive damages are available based upon tortious conduct only if the defendant acted with malice." *Galarneau v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 504 F.3d 189, 204 (1st Cir. 2007) (citing *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985)). Under that standard, "to get punitive damages, a plaintiff must show that the defendant acted with actual ill will toward the plaintiff or in a manner so outrageous that malice toward a person injured as a result of that conduct can be implied." *Id.* (citing *Tuttle*, 494 A.2d at 1361); *see also Lehouillier v. E. Coast Steel, Inc.*, 13 F. Supp. 2d 109, 110 (D. Me. 1998) (noting that defendant's "ill will" must be directed "toward the plaintiff"); *Veilleux v. Nat'l Broad. Co.*, 8 F. Supp. 2d 23, 42 (D. Me. 1998) (explaining that in the absence of "ill will" toward plaintiffs, to justify punitive damages the defendants' conduct must be "so outrageous that malice toward a person injured as a result of that conduct can be implied").

Here, beyond conclusory labels and assertions, Plaintiff has not alleged a single fact that could so much as hint that Brownells acted, expressly or impliedly, with "actual ill will" toward anyone, let alone toward Plaintiff specifically. *Galarneau*, 504 F.3d at 204. Rather, as explained herein, Brownells sold legal products, the Magazines and the Ammunition. Plaintiff has not alleged the existence of any law that prohibited the sale of the Magazines to the Shooter—and indeed, none exists. Further, Brownells did not violate any law in selling the Ammunition to the Shooter because the Shooter deceived Brownells into believing that he was of legal age to purchase

---

[8] As punitive damages are not a separate cause of action, if Plaintiff's underlying causes of action fail, so too do her claims for punitive damages. *See Rocque v. Zetty, LLC*, 456 F. Supp. 3d 257, 267 (D. Me. 2020) (explaining that punitive damages "do not constitute a separate cause of action, but instead form a remedy available for some tortious or otherwise unlawful acts").

16

it, Brownells certainly had no basis to know or even believe that the Shooter was not allowed to purchase the Ammunition. To the extent that Plaintiff argues that Brownells should have taken additional steps to verify the Shooter's age, that falls woefully short of the standard of actual ill will that is required to permit a claim for punitive damages. Accordingly, this Court should dismiss Plaintiff's claims for punitive damages.

## CONCLUSION

For the foregoing reasons, Brownells respectfully requests that this Court grant the Motion, dismiss Plaintiff's Complaint and all claims therein against Brownells with prejudice, and grant such other relief as it deems just and proper.

Dated: July 8, 2024                    Respectfully submitted,

By:    /s/ Jeffrey D. Russell
       Jeffrey D. Russell
       **VERRILL DANA LLP**
       One Portland Square
       Portland, ME 04101
       Telephone: (207) 253-4626
       Email: jrussell@verrill-law.com

              -and-

       Christopher Renzulli (*pro hac vice* to be filed)
       Scott C. Allan (*pro hac vice* to be filed)
       William J. Diggs (*pro hac vice* to be filed)
       **RENZULLI LAW FIRM, LLP**
       One North Broadway, Suite 1005
       White Plains, NY 10601
       Telephone: (914) 285-0700
       Email: crenzulli@renzullilaw.com
              sallan@renzullilaw.com
              wdiggs@renzullilaw.com

              -and-

       David H. Thompson (*pro hac vice* to be filed)
       Brian W. Barnes (*pro hac vice* to be filed)
       **COOPER & KIRK**

17

>1523 New Hampshire Ave., N.W.
>Washington, DC 20036
>Telephone: (202) 220-9659
>Email: bbarnes@cooperkirk.com
>       dthompson@cooperkirk.com
>
>*Attorneys for Defendant Brownells Incorporated*