## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

_____

BILLI-JO CLUNEY, Individually and
as Personal Representative of the
ESTATE OF JAMES M. CLUNEY, SR.

      Plaintiffs,                         Case No. 1:24-cv-00207-LEW

v.

BROWNELLS, INC.,  and MDX CORP., and
FEDEX CORPORATE SERVICES, INC.,

      Defendants.
_____


## PLAINTIFFS' OPPOSITION TO MDX CORP.'S MOTION TO DISMISS WITH INCORPROATED MEMORANDUM OF LAW

Plaintiffs Billi-Jo Cluney, Individually and as Personal Representative for the Estate of James M. Cluney, Sr., by and through undersigned Counsel, and pursuant to the Federal Rules of Civil Procedure submit this Objection to the Motion to Dismiss the Plaintiff's Complaint and affirms that the Plaintiff has stated multiple claims upon which relief can be granted by a Jury.

### SUMMARY

Defendant MDX Corp. filed a Motion to Dismiss on July 8, 2024 citing a number of legal theories in support of its arguments in favor of its position supporting dismissal.  Plaintiffs now have additional information which was not within the purview of knowledge of the Plaintiffs at the time of the filing of the Complaint, which was originally done in State Court and removed to Federal Court by the Defendants; information which confirms the accuracy of the information

1

contained in the allegations made by the Plaintiffs in their complaint that the Defendants MDX Corp, Brownells Inc., and FedEx each contributed to the facilitation of Atilio Delgado, a 16 year old, coming into possession of a 9mm handgun frame, the requisite parts to construct it, the requisite ammunition to fire from it, all of which were provided without his age ever being verified or his eligibility ever being verified to possess those items under Federal Law. This was the catalyst for Atilio Delgado to be in illegal possession of a loaded deadly weapon that he used to kill the Plaintiff James Cluney.

As with many arguments made in defense of their practices, the Defendant attempts to leverage legal nuances and illusions of legal loopholes to circumvent its legal responsibility as a distributor of firearms. However, as will be explained in detail in this opposition to the motion, these arguments contradict their position in other cases and should be denied wholly, as the circumstances in this case are issues that should be and can be decided by a Jury as the minimum thresholds to bring the claims to the Jury have been met by the Plaintiff. At this juncture, where no discovery has occurred yet, it would be premature to dismiss, and even upon discovery we believe sufficient basis exists to get to a Jury on the facts of the case alleged in the Complaint.

## FACTUAL BACKGROUND

Plaintiffs filed a Complaint alleging the facts as detailed in the MDX Motion, however additional facts should be known by the Court in consideration of this motion. In support of its Motion, MDX provided a pair of documents for the Court's inspection, which we agree can and should be reviewed and considered as alleged facts for this motion and for the credibility of the allegations in the Complaint[1]. Defendant Brownells, Inc. also filed a Motion to Dismiss on other

---

[1] In evaluating a motion to dismiss, a court may consider "documents outside of the complaint" that are "expressly incorporated" in the complaint, "central to plaintiff's claim," and/or sufficiently referred to in the complaint." *Coffin v. Bowater Inc.*, 224 F.R.D. 289, 290 (D. Me. 2004) (citing *Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d

grounds and provided additional information in their motion, supplementing the Plaintiffs knowledge of the facts alleged in the Complaint.

Through the filing of the documents by the Defendant MDX, Plaintiffs have learned significant additional details surrounding the transactions completed by Delgado, who was confirmed to be a minor at the time of purchase and at the time of delivery and at the time of his possession of the fully functioning handgun and handgun ammunition. Below are some of those additional facts which are relevant to the consideration of this motion.

Delgado's purchase from MDX in just one (1) item of a three (3) part order, for $99.99, as a single combined product, was a "***Polymer80 PF940CV1 80% Textured Compact PISTOL FRAME KIT FOR GLOCK GEN 3 G19/23".*** *(Ex. A, MDX Motion)* The Glock Gen 3 G19 or G23 is a handgun, a pistol, which there is no disputing is classified as a weapon under 18 U.S.C. SS §921(a)(3)(A). The item purchased in this order, by the plain language of its description in the Defendant's own sales records, is a ***frame for a Glock Gen 3 G19 weapon***. (*Id.*) The product purchased in that singular sales item included more than just the weapon frame, it also included the milling jig with indexed holes for drilling placement, both 3mm and 4mm drill bits for hand or machine drilling of those holes through the jig, the locking block rail system to place into the weapon frame, the rear rail module to place into the weapon frame, hardened pins to secure the locking block rail system and the rear rail module into the frame, and instructions on how to do all of this. (*Id.*) This kit included the template for drilling the holes and filing down the areas on the frame and the tools to complete those tasks[2]. The second material part of the same

---

30, 33 (1st Cir. 2001); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)); *Ramirez v. DeCoster*, No. 2:11-CV-00294-JAW, 2012 WL 2367179, at *9 (D. Me. June 21, 2012) (explaining that the court may consider "documents central to a plaintiff's claims, and documents referred to in the complaint without deciding the motion under the summary judgment standard").

[2] According to multiple videos, if not hundreds, available online to the public, the tools provided are all that is needed in the kit to drill the holes per the template and allow the frame to receive Glock G19 parts. One such video is embedded here: https://www.facebook.com/watch/?v=729682847238788

transaction completed by Delgado in the singular purchase processed by MDX CORP and shipped as one package from MDX CORP included a Glock 19 10md 9mm Elite Tactical System and also included an MDX Arms G19 V1 Build Kit with a Slide, Barrel, and Lower Parts Kit (*Id.*)  Together, this shipment contained everything needed to create a functioning Glock 19 weapon.

MDX presented a letter from the U.S. Department of Justice, ATF, who reviewed a request by Polymer80, the manufacturer of the PF940CV1 Frame & Kit, and asked whether the PF940C frame itself was considered by the interpretation of the ATF as a "firearm" in January of 2017[3].  (*Exhibit B, MDX Motion to Dismiss*) The 'product' presented by Polymer80 to ATF was only the weapon frame itself. (*Id.*) The weapon frame alone as presented to ATF in the Polymer80 letter to was not what MDX sold to Delgado**.** (*Id. & Exhibit A, MDX Motion to Dismiss*) Delgado purchased the Glock frame, the jig, the rails, the pins, the drills, and the instructions in one sales transaction item and kit. (*Exhibit A, MDX Motion to Dismiss*).  This packet of the frame, jig, drills, rails and other accessories was specifically not assessed by ATF in their assessment as detailed in the letter. (*Exhibit B, MDX Motion to Dismiss*)  In fact, they said other machining operations not present in the individual frame they assessed which could have or would have changed their interpretation of whether the PF940C qualified as a firearm" were:

---

[3] It is extremely important to note that the submitted "frame" for the PF940C submitted in Polymer80's request to the ATF was not the complete kit, as was purchased by Atilio Delgado.  It was only the frame itself.  Presuming what Delgado ordered is the same as the 'PF940CV1' cited in the letter, only one piece of the complete product sold in the transaction in this case was provided to ATF for assessment.  The complete transaction in this case included the Glock 19/23 frame, which had a locking block rail system, a rear rail module, hardened pins for both systems, a complete finishing jig, drill bits for the 3mm and 4mm holes, and instructions to assemble the kit. These additional items included in the full product purchased by Delgado were specifically enumerated as not existing in the assessment of the product for consideration as a 'frame' by ATF in their letter.

indexing of the trigger-pin hole[4]; indexing of the trigger mechanism housing pin[5]; the locking block-pin hole indexed[6]; the front frame rails[7]; or rear frame rails[8]. (*Id.*)

While the letter stated that the frame itself as inspected independently was not classified as a frame or receiver of a weapon under the GSA, it also stated explicitly that "[c]orrespondence from our Branch is dependent upon the particular facts, designs, characteristics or scenarios presented. (*Id.*) Polymer80 did not submit to FTISB the jig, drill bits, pins, rails, or instructions which constituted the entire product sold in this case in the $99.99 item. (*Id.*) They chose to send only the frame itself which was a portion of the product. (*Id.*) The FTISB cautioned against Polymer80 or others from applying its guidance in that specific letter to other cases "because complex legal or technical issues may exist that differentiate this scenario or finding from others that only appear to be the same." (*Id.*)

ATF updated its rules and provided notice to Polymer80 and FFL distributors and manufacturers in December of 2021 indicating that it would be updating its interpretation of 'frame' and 'receiver' in accordance with the new interpretations and final rule[9].

---

[4] Such as indexing through use of a jig with holes in it which was provided in the $99.99 item Delgado purchased as a singular product from MDX.

[5] Such as indexing through use of a jig with holes in it which was provided in the $99.99 item Delgado purchased as a singular product from MDX.

[6] Such as indexing through use of a jig with holes in it which was provided in the $99.99 item Delgado purchased as a singular product from MDX.

[7] Which were included and provided in the $99.99 item Delgado purchased as singular product from MDX.

[8] Which were included and provided in the $99.99 item Delgado purchased as singular product from MDX. ATF did not even mention the additional items in the $99.99 item Delgado purchased such as the actual pins to hold the mechanisms in place, or the instructions to assemble those pieces.

[9] In particular, the Open letter on Final Rule 2021-05F sent to Polymer80 stated: Applying the regulatory text of Final Rule 2021-05F, partially complete Polymer80, Lone Wolf, and similar striker-fired semiautomatic pistol frames, including, but not limited to, those sold within parts kits, have reached a stage of manufacture where they "may readily be completed, assembled, restored, or otherwise converted" to a functional frame. This definition of "readily" applies to each and every classification of a partially complete frame or receiver under this Rule, whether sold alone or as part of a kit. Therefore, even without any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials, these partially complete pistol frames are "frames" and also "firearms" as defined in the GCA and its implementing regulations, 18 U.S.C. § 921(a)(3)(B) and 27 CFR 478.12(a)(1), (c).

Indeed the 'technical issue' that presents in the circumstances in the Plaintiffs case which differentiates it from the analysis performed and outlined in that ATF letter is that Delgado did not purchase just the frame. The purchase included many of the technical items ATF noted were missing that would have contributed to their determination at that time in 2017 as to whether the product reviewed was sufficient to constitute a frame. If Polymer80 or MDX submitted the product Delgado purchased today to determine whether it is a firearm according to ATF's interpretation of 18 U.S.C. §921, we are confident that ATF would designate the product purchased as a firearm under the definitions of Congressionally enacted law. At a minimum this raises a factual issue that requires discovery and precludes dismissal at this stage.

Stating that this 'kit' did not constitute a frame for the purposes of qualifying under the GSA for regulation and verification of age and eligibility is akin to a brewer selling a keg of unfermented beer to a 16 year old and giving him yeast, finishing sugar, the CO2, and instructions on how to complete the brewing process and telling the authorities it was "not beer yet" because the yeast and sugar and CO2 were not added yet. This would never be allowed, yet it is precisely the argument that MDX proposes in its Motion and with its evidence, despite knowing that it has sold all the parts that comprise a functioning handgun to a minor. It simply does not pass the straight face test, let alone comply with the law.

MDX, like its co-defendant Brownells Inc. in their motion, do not get to argue the benefits of ATF adding words and context to the plain language articulated by Congress in 18 U.S.C. §921 [specifically in this case the word and interpretation added was "unfinished" to "frame" before 2022] then argue to the Courts today in this and various other litigation actions that after 2022, when ATF added language interpreting frames to include 'frame kits', that it is now illegal to add language and make their own interpretation. The Defendants and their

industry argue against adding the word "kit" to the definition but have benefited from the argument of adding "unfinished" historically.  They have been successful in litigation actions which are pending before the U.S. Supreme Court arguing that ATF cannot interpret the statute.  Neither ATF nor the Defendants get to be the ones to interpret the law, Congress does through its express language and the Courts do in their interpretation.  Congress did not say "finished frame" it said "frame".  This product sold to Delgado is "a compact pistol frame" for a Glock Gen 3 G19/23.  It is the "frame" for that Glock G19 weapon, the same weapon used to kill James Cluney.  It is sold with instructions and all parts necessary, as a single commercial product for one price, to be a frame for a weapon, once the instructions are followed for that product.  MDX cannot have it both ways.  It cannot obtain the benefit of broadened statutory interpretation of the plain language in 18 U.S.C. §921 prior to the August 2022 memorandum and then reject broader statutory interpretations of the plain language afterward.  Further, MDX's products sold do fit the definition of 17-A M.R.S.A. §554-B as the sale of a handgun to a minor, which is a crime under the laws of the State of Maine, for which there is no defensible position available for MDX.

For all these reasons and more, the Motion filed by MDX should be denied.

## LEGAL STANDARD

Plaintiffs filed their Complaint in Maine State Court, and Defense Counsel removed it to Federal Court.  When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011) (citing Fed. R. Civ. P. 12(b)(6)).  A court need not assume the truth of conclusory allegations, and the complaint must state at least a "plausible

claim for relief ....” *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). However, “[n]on-conclusory factual allegations in the complaint must ... be treated as true, even if seemingly incredible.” *Ocasio-Hernández*, 640 F.3d at 12. A court may not “attempt to forecast a plaintiff's likelihood of success on the merits ....” *Id.* at 12-13.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a “short plain statement of the claim showing that the pleader is entitled to relief.”  To overcome a 12(b) motion to dismiss, a complaint “does not need detailed factual allegations” instead the pleading “must contain something more … than … a statement of facts that merely creates a suspicion of a legally cognizable right of action on the assumption that the allegations in the complaint are true.” *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). “Once a claim for relief has been stated, a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.” *Id*. at 1969 (citing *Sanjuan v. American Bd. Of Psychiatry and Neurology, Inc*., 40 F.3d 247, 251 (7th Cir. 1994)).

“Maine is a notice pleading state” and the “notice pleading standard … [is] forgiving.” *Johnston v. Me. Energy Recovery Co., Ltd. P'ship,* 2010 ME 52, ¶16, 997 A.2d 741. A complaint need only “give fair notice of the cause of action by providing a short and plain statement of the claim showing that the pleader is entitled to relief,” and then make a demand for that relief. *Burns v. Architectural Doors & Windows,* 2011 ME 61, ¶16, 21, 19 A.3d 823 (citations and quotation marks omitted); M.R.Civ.P. 8(a). The “complaint need not identify the particular legal theories that will be relied upon, but it must describe the essence of the claim and allege facts sufficient to demonstrate that the complaining party has been injured in a way that entitles him or her to relief.” *Burns,* 2011 ME 61, ¶17, 19 A.3d 823 (quotation marks omitted.)  *Howe v. MMG Ins. Co.,* 2014 ME 78, ¶9, 95 A.3d 79, 81-82.

In the general filing of the complaint, all potential legal theories must be implied and interpreted in the light most favorable to the Plaintiff. *Saunders v. Tisher*, 2006 ME 94, ¶8, 902 A.2d 830. All theories of general negligence, including negligent entrustment and other theories that could possibly be derived from the facts of the case need not specifically be plead, but are instead incorporated in the basic principles of the allegations in the complaint, and must be interpreted as "an evaluation of the allegations in the complaint in relation to any cause of action that may reasonably be inferred from the complaint… in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.*

Maine is not a negligence *per se* state. Violation of the law is not a requirement in order for negligence, wrongful death, or any of the claims pled in this case to succeed. In fact, the rule in Maine is that a violation of statute "is not negligence *per se*, but only evidence of negligence." *Dongo v. Banks,* 448 A.2d 885, 899 (Me. 1982). If a violation of law contributed in any way to the event at issue, the Jury can weigh that information in making its determination as to whether negligence or any other pled civil claim is proven, but the decision is for the Jury to weigh that evidence as a fact.

In evaluating a motion to dismiss, a court may consider "documents outside of the complaint" that are "expressly incorporated" in the complaint, "central to plaintiff's claim," and/or sufficiently referred to in the complaint." *Coffin v. Bowater Inc.*, 224 F.R.D. 289, 290 (D. Me. 2004) (citing *Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)); *Ramirez v. DeCoster*, No. 2:11-CV-00294-JAW, 2012 WL 2367179, at *9 (D. Me. June 21, 2012) (explaining that the court may consider

"documents central to a plaintiff's claims, and documents referred to in the complaint without deciding the motion under the summary judgment standard").

## ARGUMENTS – MEMORANDUM OF LAW

### I.    *MDX VIOLATION OF FEDERAL LAW EVIDENCES SUFFICIENT FACTS FOR PLAINTIFF TO PROCEED ON EACH COUNT OF THE COMPLAINT*

#### a.    *Plaintiffs state a plausible allegation that the products sold to Delgado constitute a firearm as defined under 18 U.S.C. §921(a)(3) exists.*

Federal law defines a "firearm" quite plainly under 18 U.S.C. §921(a)(3)(B) (hereinafter "Section B") as "the frame or receiver" of "any weapon (including a starter gun)" under §921(a)(3)(A) (hereinafter "Section A") "which will or is designed to or may readily be converted to expel a projectile by the action of an explosive."

Neither the Federal Statute nor the Congressional Record associated with the passing of this statute required that the "frame or receiver" require zero manipulation in order to function. In fact, they did not state "functioning frame" or "functioning receiver". Instead, the language of Section B simply states that a firearm means "the frame of any such weapon" as defined in Section A. Those weapons specifically for Section B are "any weapon which will" or "which is designed to" or "which may readily be converted to" expel a projectile by the action of an explosive.

We are explicitly not making that argument to the Court in this case that the language "can be manipulated" from Section A also applies to Section B for the definition of a frame. However, the argument that this frame is a firearm does not require application of that clause to Section B for the product sold to Delgado to constitute a firearm frame.

The statute states "a frame for any such weapon". What weapon is referenced in that section of the statute? It can only be a 'weapon' defined in Section A. What was the product sold to Delgado in this case? It was a Polymer80 PF940CV1 80% Textured Compact PISTOL FRAME KIT FOR GLOCK GEN 3 G19/23". The product was, specifically, a frame for a Glock Pistol. A Glock Pistol is a weapon which will, or which is designed to, or which may readily be converted to expel a projectile by the action of an explosive. There is no other purpose or function of the product sold to Delgado other than for it to be a frame for a pistol.

This Court does not need to be the first Court in the nation to hold this plain language definition to be an accurate and sufficient pleading by a Plaintiff. In *New York v. Arm or Ally, LLC* 2024 WL 756474 118 Fed.R.Serv.3d 254 the U.S. District Court concluded that unfinished firearm frames and receivers fall within federal definitions of "firearms" under 18 U.S.C. §921(a)(3)(B) and that the unlawful sale of them is not preempted by the Protection of Lawful Commerce in Arms Act (PLCAA). Below are some relevant excerpts from that case from pages 5 through 11 of the decision on Defendant's Motion to Dismiss in that case:

> As the Moving Defendants themselves submit, "readily" means "[w]ith promptness; quickly; at once; easily." Brownells Mem. 25 (quoting *Readily*, Webster's Second New International Dictionary); *see also Readily*, Webster's Third New International Dictionary ("without much difficulty"). According to the State's pleadings, Defendants' unfinished frames and receivers meet this definition because they "can be converted into ... working gun[s] in under thirty minutes" by someone with prior experience, and in under an hour by an amateur. SAC ¶ 31. As the State further alleges, Defendants themselves have advertised their unfinished frames and receivers as "ridiculously easy for a non-machinist to finish ... in under 1 hour with no drill press required," *id.* ¶ 41, "[i]n the comfort and privacy of [one's] home," *id.* ¶ 124. Indeed, unfinished frames and receivers are commonly called "80% lowers" because "about 80 percent of the work is already done for you." *Id.* ¶ 51. As one Defendant stated in a marketing video: "Even a caveman can do this." *Id.* ¶ 47. From these allegations alone, one can "draw the reasonable inference" that unfinished frames and receivers "may readily be converted" into functional firearms and, thus, are firearms that should have been serialized and otherwise sold subject to the restrictions imposed by federal law. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.
>
> In light of that conclusion, the Court need not actually reach the Moving Defendants' argument that unfinished frames and receivers, absent "combination" with other parts, "will" not, and are not "designed to," fire projectiles. Brownells Mem. 10-11. That is, it is enough for now to

11

determine that the State plausibly alleges that unfinished frames and receivers are "firearms" because they "may readily be converted" to fire a projectile. *See United States v. Rivera*, 415 F.3d 284, 287 (2d Cir. 2005) ("The Government need only show that the weapon[ ] was either 'designed to' or 'may readily be converted.' It need not demonstrate both." (citation omitted)). In any case, the Moving Defendants' argument fails because it is not faithful to the statutory text, which does not require that the object "will" or be "designed to" fire projectiles in and of itself. The State plausibly alleges that Defendants' unfinished frames and receivers "will" and are "designed to" fire projectiles when, for example, as instructed in one of Defendant 80 Percent Arms' marketing videos, the user "snap[s] it into an easy jig, and drill[s] into the areas the template guides you through" so that the part "simply snaps together with the other parts contained in our ... kit." SAC ¶ 51. In other words, Defendants' ghost gun products are literally the templates for a working gun, with "no other function or purpose. *Id.* ¶ 32; *see also id.* ¶ 89.

*New York v. Arm or Ally, Pages 5-8.*

The District Court of New York's analysis is equally applicable here in this case.

> **b.** **Defendant's reliance on the 2017 ATF letter is not 'longstanding ATF guidance, and in fact the much longer-standing ATF guidance supports that frames, whether finished or not, are in fact firearms. Furthermore, the reliance on the letter from 2017 as it applies to the facts in this case are misleading since the product reviewed in that letter was not the entire transactions completed by Delgado, or even the entire singular product sold to Delgado, in this case.**

The Defendant's reliance on the 2017 ATF letter, which assessed materially different facts and circumstances than in this case, omits from record to the Court other letters that addressed these 'unfinished firearm frames' including the letter from 1978 which was produced in the *New York v. Arm or Ally, LLC* case and the 1980 letter from ATF, both of which are attached in support of this pleading as Exhibit A and Exhibit B. In these letters, ATF took the clear position that "an unfinished firearm receiver which may be readily converted to functional condition is a firearm as defined" under 18 U.S.C. §921(a)(3)(B) and where conversion could occur in "a few hours" through use of hand tools it was sufficient to likewise qualify as a frame, and therefore a firearm. U.S. District Court of New York found those letters to be just as persuasive as the ATF

letter from 2017 and were unpersuaded by the evidence presented by the Defendant Brownells, Inc. (which just happens to be the same letter produced in this motion by Defendant MDX). *(Id. at 9)*

    If that is not enough, Defendant MDX creates its own standard in its motion citing that it is "the completed firearm" that is designed to expel a projectile, not its trigger, its hammer or striker, the barrel, the grip, or the frame. This argument flies in the face of the plain language of 18 U.S.C. §921(a)(3)(B), which specifically calls out that the frame does constitute a firearm if it is a frame for any such weapon. Even if it did not, the transaction completed by the Defendant MDX was, in fact, to sell all the components for a completed firearm to Delgado, as he purchased not just a Glock G19 frame, but the frame kit with jig, rails, pins, drills, jig, and the remaining components to construct the Glock G19 in the MDX Arms Build Kit purchased for $319.99. Defendant MDX would like to compartmentalize each piece of the individual items and say it is legal to sell those individually, but the truth is they sold a broken-down Glock G19 and everything needed to put it together to make a Glock G19 pistol to Delgado, a minor. This violated Federal law, and under Maine law is evidence of negligence, and in taking the complaint in the light most favorable to the Plaintiff, and taking into consideration through Judicial Notice the evidence provided by the Defendants in their own Motions, a plausible allegation that Defendant MDX's products sold to Delgado constitute a "firearm" within the meaning of 18 U.S.C. §921(a)(3) during the relevant time period exists.

    The Court should give great weight to the much longer standing ATF interpretation dating back decades to the 1970's which is, as was argued by the United States by Attorney Damian Williams in its official position in opposition to the motion to dismiss in 22-CV-6124 in the U.S. Southern District of New York, attached as Exhibit C. At the very least, this issue requires

discovery and dismissal at this stage is not appropriate, and we anticipate through that Discovery that the evidence proving sufficient evidence exists to present this case to a Jury will be confirmed.

## II.    *MDX DID VIOLATE MAINE STATE LAW EVIDENCING RELEVANT FACTS FOR EACH COUNT AGAINST THEM IN THE COMPLAINT*

If the Defendant's interpretation of the definition of frame is to be accepted despite the clear statutory language of 18 U.S.C. §921(a)(3)(B), which we strongly argue to be a false interpretation through adding language to the congressional language, the claims in this matter still remain viable against MDX through its evidence of violation of Maine Law.

MDX is unable to make ***any claims*** that their products sold to Delgado do not violate Maine Law under 17-A M.R.S.A. §554-B which defined a handgun as "a firearm that has a short stock and is designed to be held and fired by the use of a single hand, **or any combination of parts from which a handgun can be assembled."** (*emphasis added*)[10].  This definition and the

---

[10] Defendant attempts to re-define the Plaintiffs positions in its complaint by changing the Court's attention from the legal definition of a handgun, for which minors are expressly prohibited from purchasing, or even possessing absent strict circumstances, with the general definition of a firearm which is a broader category of weapon.  In this case, there is no dispute that the weapon purchased was for a handgun, a Glock G19, and also there is no dispute that the transaction completed by the Defendant constitutes "any combination of parts from which a handgun can be assembled" as defined by main law specific to the prohibition of sale, transfer, and possession by a minor in Maine. Further, the Defendant cites to a 2019 failed piece of legislature to differentiate their frame from this definition cited by the Plaintiffs.  The Defendant omits the clear summary of the legislative intent from that proposed bill, which states in substance:  "*This bill regulates the manufacture, distribution and possession of so-called ghost guns and so-called 3-D printed guns or 3-D guns, which are fully functioning firearms that can be made at home by unlicensed firearm manufacturers, sellers and distributors either by purchasing the necessary parts separately, or as part of mail order gun kits, and then assembling them at home or by downloading a computer code from the Internet that allows the user to manufacture the gun using a 3-D printer. This bill provides definitions of "undetectable firearm" and "untraceable firearm" and prohibits the manufacture, import, sale, transfer and possession of such firearms with certain exceptions. This bill also prohibits, with certain exceptions, the dissemination of downloadable gun code from which untraceable firearms can be manufactured.*"  Even despite the legislative intent for that bill not applying to the circumstances in this case, the argument proposed under this section of the Motion confuses the issue of the legality of their product as a firearm versus as a handgun as defined by Maine law.  Since it does not address the legality of illegality of their products and the transactions as a handgun, we find no further need to substantively respond to its extrapolation of the rejected 2019 Legislative act or its potential impact on weapon frame transactions such as that which the facts confirm occurred in this case.

facts provided by the Defendant in its own Motion to Dismiss confirm the illegality of the transaction as it occurred.  This violation of the law, by Maine Law, is evidence of negligence.

*Fahr* never considered the definition of handgun as defined under Maine Law.  Instead of simply using the word 'frame' as the GSA uses, Maine has adopted a much more refined definition of handgun as being "any combination of parts from which a handgun can be assembled."  Notably, MDX fails to address this definition in its motion to dismiss, because it knows that the products sold in the transaction to Delgado constitute a combination of parts from which a handgun can be assembled.

### III.    MDX did owe and breach duty to James Cluney Sr. through its illegal conduct in supplying a minor with a handgun.

Defendant has a legal duty to comply with the law.  For years Defendant MDX, Defendant Brownells, and a myriad of other gun manufacturers and distributers have leveraged loopholes to circumvent the legal, lawful process of purchasing firearms and ammunition.  This case does not stand to deprive lawful citizens of their right to arms or ammunition.  It seeks to hold those accountable for circumventing the law through convenience and opportunity at the expense of the safety of the public. The United States put into place laws which prevent minors from purchasing guns and ammunition for a reason, and that was because the general protection of the public was paramount, and individuals under 18 and 21, respective of the provisions of 18 U.S.C. §921 and 922 have lawfully been determined unsafe to possess those items or purchase those items absent the appropriate supervision (military, hunting, shooting with responsible adult, etc.).  The unrestricted access to those items, namely handguns that are easily wielded and concealed even by minors, is what was sought to be prevented through 18 U.S.C. §921 and 922. Defendant MDX, in ignoring their legal obligations and circumventing their duties as dealers in

firearm frames and all the parts that make up firearms and handguns, violated the duty owed to the general public and specifically to the Plaintiffs.

Defendant MDX argues that absent a special relationship they cannot be responsible for the acts of a third party, citing to *Belyea, Cameron,* and *Baker*.  However, this action is based on the conduct of the Defendant MDX.  As Defendant MDX quoted, *Belyea* stands for the principle that the law "imposes no duty to act affirmatively to protect someone from danger unless the dangerous situation was created by the defendant" and therefore, under Maine law, the duty to act affirmatively to protect someone from danger is imposed by law under those circumstances.  *Belyea v. Shiretown Motor Inn, LP*, 2010 ME 75, ¶ 6 & 9, 2 A.3d 276

The concept of foreseeability "enters into ... the willingness of the court to recognize the existence of a duty ...." *Cameron*, 610 A.2d at 282 (quoting *Thing v. La Chusa*, 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814, 819 n.3 (1989)). The Maine Supreme Judicial Court quoted the California Supreme Court's view of the way a court should consider foreseeability:

> [A] court's task—in determining "duty"—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.

*Id.* (quoting *Thing*, 257 Cal.Rptr. 865, 771 P.2d at 819 n.3) (alteration and emphasis in original).

The Law Court stated more generally that "[f]oreseeability ... is one consideration among many that must be taken into account when courts engage in a duty analysis," including policy considerations. *Id.* at 282, 284.  An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the

other or a third person which is intended to cause harm, even though such conduct is criminal. *Id.* (quoting Restatement Torts § 302B). *Gniadek*, 2011 ME 11, ¶ 28, 11 A.3d 308 ("[T]he law may impose a duty to protect someone from the danger created by the defendant").

To differentiate this case from *Baker* is quite simple:  it was not foreseeable that selling a BB gun would cause an officer to independently and intentionally shoot Baker.  However, it is reasonably foreseeable that selling a firearm frame and kit to a minor, an illegal act, could result in the minor using that untraceable, unregistered, and illegally obtained handgun to harm himself or the public, including in this specific circumstance, the Plaintiffs.  In fact, Congress and the State of Maine's decisions to expressly restrict access is a patently foreseeable harm. That distinguishes the facts in this case from the holding in *Baker* when discussing foreseeability of harm caused by the negligence of the Defendant MDX.

### IV.    MDX actions were proximate and/or legal cause of the Death of James Cluney, Sr.

Defendant MDX's actions were the definition of the proximate cause of harm to the Plaintiffs.  The illegal actions of Defendant MDX was more than just the substantial factor in bringing about the harm, but the harm would never have been able to occur absent their conduct.

Defendant MDX's entire argument against causation crumbles as it relies time and time again on the 'fact' that it did not violate any laws.  Clearly, they are wrong since they violated State law, 17-A M.R.S.A. §554-B, and we believe it is likewise clear they violated Federal law under 18 U.S.C. §921(a)(3)(B) and 18 U.S.C. §922.  Regardless of the Federal question, their violation of State law alone allows the claims to proceed part this motion to dismiss and survive to get to a jury, as their unlawful act was a proximate cause of the harm.

17

Defendant MDX cites to a Texas case, *Cowart*, in which .22 long rifle ammunition was sold to a 17 year old, and another person not part of the sale or transaction obtained possession of the gun and shot someone after engaging in a fight. The Texas courts noted in that case that they followed the guidance of the Restatement (Second) of Torts:

> The act of a third person committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

Restatement (Second) of Torts § 448 (1965).

Unlike in *Cowart*, Defendant MDX sold its products directly to Delgado. There was no break in the causal chain, no superseding events, nothing other than Defendant MDX taking money in exchange for providing a handgun under Maine law and a firearm under Federal law to a minor, who directly used that gun to shoot and kill the Plaintiff.

Defendant claims superseding causes break the chain of causation, relying on the 'unforeseeable' events that occurred. When an action, however, is foreseeable from negligence, and is a substantial contributor to the harm, the original tortfeasor and negligent actor is proximately responsible for the causation of harm. This act in this case was not unforeseeable. Laws exist to specifically stop this type of action from occurring. Laws designed to stop minors from driving, drinking, smoking, and buying handguns all exist because dangers to the public or the minors themselves are inherently reasonably foreseeable. When Defendant MDX sold this handgun to Delgado, the outcome that someone was going to be hurt by it was almost a certainty. There is little more that needs to be repeated on this issue.

## **CONCLUSION**

The Defendant admits it sold a Glock 19 handgun frame kit and components to assemble the handgun to Delgado, a minor, through an internet purchase, using an untraceable gift card. This violates Federal and State law, and it was only through the illegal actions of the Defendant that Delgado had possession of a handgun and shot James Cluney Sr., causing him injury and death, and causing his wife harms.

The claims made in this matter remain the same even if the Defendant is right in its convoluted interpretation of the language of the GSA and its definition of frame. Only the amount of evidence to be considered by the Jury would change if they are right, which they are not. Attempting to pick off one piece of potential evidence within a claim where ample other evidence remains available within the alleged facts and the claims to permit the Plaintiff to obtain relief does not demonstrate "a failure to state a claim upon which relief can be granted" as articulated under F. R. Civ. P. 12(b)(6). The limits of granting a Rule 12(b)(6) request must encompass a reality where no claim by the Plaintiff has a chance of being found by a Jury the Defendant was civilly responsible. Just as these facts and allegations and admissions and evidence obtained even prior to discovery support succeeding through Summary Judgement, so too does it support the Plaintiffs succeeding through the Motion to Dismiss. This high burden simply has not been met in this case by the Defendant, and we ask this Honorable Court to deny the Defendant's Motion to Dismiss in its entirety.

/s/ *Peter Richard, Esq.*

Peter Richard, Esq, - Bar # 4674
David Kreisler, Esq, - Bar #8098
*Attorneys for Plaintiffs*
GARMEY LAW
482 Congress Street, Suite 402
Portland, ME 04104
(207) 899-4644
prichard@garmeylaw.com
dkreisler@garmeylaw.com

## CERTIFICATE OF SERVICE

I, Peter Richard, hereby certify that on this 19th day of August, 2024, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to the following:

JASON W. BERNHARDT , JR.
FEDERAL EXPRESS CORPORATION
3620 HACKS CROSS ROAD
BUILDING B 3RD FLOOR
MEMPHIS, TN 38125
901-434-3213
*LEAD ATTORNEY – FedEx Corporate Services, Inc.*
*PRO HAC VICE*

JOSHUA D. DUNLAP
PIERCE ATWOOD LLP
254 COMMERCIAL STREET
PORTLAND, ME 04101
Email: jdunlap@pierceatwood.com
*LEAD ATTORNEY – FedEx Corporate Services, Inc.*

JULIA BRENNAN MACDONALD
PIERCE ATWOOD LLP
MERRILL'S WHARF
254 COMMERCIAL STREET
PORTLAND, ME 04101
207-791-1100
Email: jmacdonald@pierceatwood.com
*LEAD ATTORNEY – FedEx Corporate Services, Inc.*

THOMAS WHITELAW MURREY , JR.
FEDERAL EXPRESS CORPORATION
LITIGATION DEPARTMENT

3620 HACKS CROSS ROAD
BUILDING B
3RD FLOOR
MEMPHIS, TN 38125
901-434-8558
Fax: 901-434-9279
Email: twmurrey@fedex.com
*LEAD ATTORNEY – FedEx Corporate Services, Inc.*
*PRO HAC VICE*

RYAN L. ERDREICH, ESQ.
PISCIOTTI LALLIS ERDREICH
30 COLUMBIA TURNPIKE, SUITE 205
FLORHAM PARK, NJ 07932
Email:  rerdreich@pisciotti.com
*COUNSEL FOR DEFENDANT MDX CORP.*

CHRISTOPHER RENZULLI, ESQ.
RENZULLI LAW FIRM, LLP
ONE NORTH BROADWAY, SUITE 1005
WHITE PLAINS, NY 10601
Email:  crenzulli@renzullilaw.com
*COUNSEL FOR DEFENDANT BROWNELLS, INC.*

                                        */s/ Peter Richard*
                                        Peter Richard, Esq.