UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| BILLI-JO CLUNEY, individually and as personal representative for the Estate of James M. Cluney, Sr., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:24-cv-00207-SDN |
| BROWNELLS, INC., MDX CORP., and FEDEX CORPORATE SERVICES, INC., | ) ) ) ) | |
| Defendants. | ) ) ) | |

## <u>ORDER ON DEFENDANTS' MOTIONS TO DISMISS</u>

Plaintiff Billi-Jo Cluney, in her individual capacity and as personal representative of the estate of her late husband, James M. Cluney, Sr., brings this action against two companies[1] that allegedly manufacture and sell products used to make "ghost guns"—homemade guns that lack serial numbers and are thus untraceable—for wrongful death and other negligence claims, as well as punitive damages. Plaintiff's claims arise out of the death of James Cluney, allegedly at the hands of Atilio Delgado, who was a minor at the time of the shooting, by Delgado's use of a "ghost gun" assembled with products he purchased online from Moving Defendants. Concluding that Plaintiff has pled sufficient factual information to plausibly narrate claims for relief to withstand these motions to dismiss, the Court denies Moving Defendants' Motions.

---

[1] Defendants MDX Corp. and Brownells, Inc. have moved to dismiss. ECF Nos. 16 & 17. Defendant FedEx Corporate Services, Inc., is a shipping company and has not moved to dismiss nor moved to join the co-defendants' motions. The Court will use the term "Moving Defendants" here to refer to MDX Corp. and Brownells, Inc.

## I.    BACKGROUND

### A. Statutory and Regulatory Background

The manufacture and sale of firearms are governed by both state and federal law. The laws relevant to this action are the Gun Control Act of 1968 (GCA), 18 U.S.C. § 921 et seq., the Protection of Lawful Commerce in Arms Act (PLCAA), 15 U.S.C. § 7901 et seq., and 17-A M.R.S. § 554-B, prohibiting the transfer of a handgun to a minor.

### 1. Gun Control Act of 1968

Under the GCA, it is unlawful for any licensed firearms manufacturer or dealer to "sell or deliver . . . any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age . . . ." 18 U.S.C. § 922(b)(1). It is further unlawful for any licensee to

> sell or deliver . . . any firearm to any person in any State where the purchase or possession by such person of such firearm would be in violation of any State law or any published ordinance applicable at the place of sale, delivery or other disposition, unless the licensee knows or has reasonable cause to believe that the purchase or possession would not be in violation of such State law or such published ordinance[.]

*Id.* § 922(b)(2). If a purchaser of firearms does not appear in person at the licensee's place of business, the GCA requires licensees to obtain a sworn statement that the purchaser is of age and not prohibited from receiving a firearm, notify local law enforcement where the purchaser is located, and retain documentation of the statement, notification, and receipt or rejection of notification. *Id.* § 922(c).

The GCA defines "firearm," in relevant part, as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; [or] (B) the frame or receiver of any such weapon . . . ." *Id.* § 921(a)(3). There is no definition of "frame or receiver" in the GCA, but the Bureau of

Alcohol, Tobacco, and Firearms (ATF) provided a definition by regulation in 1978: "That part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." Title and Definition Changes, 43 Fed. Reg. 13531, 13537 (Mar. 31, 1978). The 1978 ATF final rule did not further expand upon the GCA's definition of "firearm" in any way relevant to this case. *Compare id.*, *with* 18 U.S.C. § 921(a)(3)(A)-(B). These definitions stayed in place until 2022 and were the regulatory definitions in effect during the time period relevant to this case. *See* 27 C.F.R. § 478.11 (2021); *VanDerStok v. Garland*, 86 F.4th 179, 184 (5th Cir. 2023) ("This definition remained unchanged for over forty years, until ATF issued the Final Rule in 2022."), *rev'd*, *Bondi v. VanDerStok,* No. 23-852, 2025 WL 906503 (U.S. Mar. 26, 2025).

On April 26, 2022, after the transactions giving rise to Plaintiff's claims took place, ATF published its final rule, Definition of "Frame or Receiver" and Identification of Firearms, updating the definitions of "firearm" and "frame or receiver" to include parts kits. Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24652 (Apr. 26, 2022). The final rule adds the following to the definition of "firearm": "The term shall include a weapon parts kit that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive." 87 Fed. Reg. at 24735. ATF further updated the definition of "frame or receiver" to "include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver." *Id.* at 24739 (codified at 27 C.F.R. § 478.12(c)). This definition does not apply to "article[s] that ha[ve] not yet reached a stage of manufacture where [they are] clearly

identifiable as an unfinished component part of a weapon." 27 C.F.R. § 478.12(c). The rule also defines "readily" as: "A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state." 87 Fed. Reg. at 24735. These additions to the definitions "make[] explicit that manufacturers and sellers of [weapon parts] kits or aggregations of weapon parts are subject to the same regulatory requirements applicable to the manufacture or sale of fully completed and assembled firearms." *Id.* at 24662. The Supreme Court recently upheld ATF's final rule against a facial challenge to the validity of the regulatory definitions' inclusion of unfinished parts kits in the definitions of "firearm" and "frame or receiver." *Bondi v. VanDerStok,* No. 23-852, 2025 WL 906503, at *12 (U.S. Mar. 26, 2025).

## 2. Protection of Lawful Commerce in Arms Act

The PLCAA was enacted to, among other purposes, "prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended." 15 U.S.C. § 7901(b)(1). Under the PLCAA, a "qualified civil liability action may not be brought in any Federal or State court." *Id.* § 7902(a). The Act defines "qualified civil liability action" as

> a civil action or proceeding . . . brought by any person against a manufacturer or seller of a qualified product . . . for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party . . . .

*Id.* § 7903(5)(A). A "qualified product" is "a firearm (as defined in subparagraph (A) or (B) of [the GCA definition of "firearm"]) . . . or ammunition . . . or a component part

4

of a firearm or ammunition, that has been shipped or transported in interstate or foreign commerce." *Id*. § 7903(4). The exemptions from the definition of "qualified civil liability action" include: "[A]n action brought against a seller for negligent entrustment or negligence per se," and "an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought . . . ." *Id*. § 7903(5)(A)(ii)-(iii).

### 3. Maine Law

Under Maine law, it is a Class D criminal offense to "knowingly transfer[] a handgun to a person who the transferor knows or has reasonable cause to believe is a minor." 17-A M.R.S. § 554-B(2). "Handgun" is defined as "a firearm that has a short stock and is designed to be held and fired by the use of a single hand, or any combination of parts from which a handgun can be assembled." *Id*. § 554-B(1)(A).

### B. Factual Background

I draw the following facts from Plaintiff's Complaint (ECF No. 1-1) and treat such facts as true for to resolve the Moving Defendants' motions to dismiss.

Plaintiff Billi-Jo Cluney and decedent, James M. Cluney, Sr., were married and lived together with their two children at their home in Brooks, Maine. Compl. ¶¶ 86-87. Some time between 2018 and 2019, the Cluneys informally took in two underprivileged children, Atilio Delgado and his younger brother. Compl. ¶ 88. Atilio Delgado was an acquaintance of the Cluneys' children through school. Compl. ¶ 90. The Cluney children reported to their parents that Atilio Delgado's parents were "drug addicts" and did not take care of him. *Id*. The Cluneys allowed Atilio Delgado to live in their home most days and nights of the week and the family treated him as one of their own. Compl. ¶ 91. The

Cluneys did not apply for or take aid from the state for caring for the Delgado boys and did not take money from the boys' parents for the care of the boys; they did so at their own financial expense. Compl. ¶ 92. By 2022, Atilio Delgado had been living at the Cluneys' home for approximately three and a half years and was sixteen years old. Compl. ¶ 93.

On or around October 8, 2021, Atilio Delgado pre-loaded $440.00 on a pre-paid Visa gift card issued through SecureSpend,[2] Compl. ¶ 94, and used the SecureSpend pre-paid Visa gift card to make a purchase of parts to construct a handgun from MDX Corp. in California totaling $434.74, Compl. ¶ 95. An invoice[3] produced by MDX Corp. and attached to its Motion to Dismiss as Exhibit A (ECF No. 16-1) shows that, on the same day, Atilio Delgado purchased the following items from MDX Corp.: (1) "Polymer80 PF940CV1 80% Textured Compact Pistol Frame Kit for Glock Gen 3 G19/23;" (2) "Elite Tactical System (ETS) Glock 19 10rnd 9mm Clear Polymer Finish;" and (3) "MDX Arms G19 V1 Build Kit – No Frame" for a total of $434.74. (ECF No. 16-1).

MDX Corp. is a business founded in Riverside, California, that sells and distributes firearm parts including build kits for assembling handguns from separate unrefined and unpolished parts. Compl. ¶ 16. These parts are known colloquially as "ghost gun kits"

---

[2] The card number of the pre-paid Visa gift card was 4097 5807 5588 1700 with an expiration date of July 2029 issued to "CARDHOLDER." Compl. ¶ 94.

[3] Generally, courts may not consider material beyond the complaint on a motion to dismiss without converting the motion into one for summary judgment. *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). However, there is a "narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" *Id.* (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). "When the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." *Id.* (quoting *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998)). Here, Plaintiff has sufficiently referred to the invoice in her Complaint at ¶ 95 where she references the transaction. Additionally, Plaintiff does not dispute the authenticity of the invoice and in fact encourages the Court to consider it in resolving the motions to dismiss. *See* ECF No. 24 at 2-3. The Court will treat MDX Corp.'s Exhibit A (ECF No. 16-1) as merged with the pleadings.

among the law enforcement community because the parts are not sold through the firearms background screening and age verification processes. Compl. ¶ 17. During the relevant time period and at least to the date of the Complaint, MDX Corp. had instructions on its website for how to assemble its kits and components. Compl. ¶ 18. Because the parts MDX Corp. sells are "unserialized firearm precursor parts" that cannot legally be sold in California, MDX Corp. sells its products online at mdxarms.com. Compl. ¶¶ 19-20. MDX Corp. previously sold frame build kits with frames included, but, as of the filing of Plaintiff's Complaint, had stopped selling those build kits containing frames. Compl. ¶ 22. MDX Corp. ships its products through FedEx and other shipping carrier services. Compl. ¶ 23. MDX Corp. is a firearms distributor subject to federal laws and ATF regulations. Compl. ¶ 24.

Atilio Delgado made three purchases from Defendant Brownells in November and December of 2021. *See* Compl. ¶¶ 96-99. According to invoices[4] produced by Brownells and attached to its motion to dismiss, Atilio Delgado made two purchases from Brownells on November 8, 2021, and one on December 15, 2021. (ECF Nos. 17-2, 17-3, 17-4). The first invoice shows that Atilio Delgado purchased a product named "V-CROWN 9MM 147GR JHP 50/BX" for a total of $69.01 on November 8, 2021. (ECF No. 17-2). The Complaint alleges Atilio Delgado used a OneVanilla pre-paid Visa gift card to make this $69.01 purchase from Brownells.com. Compl. ¶ 96. The second invoice shows Atilio Delgado purchased a product named "KCI GLOCK 9MM 17RD MAGAZINE" for a total of $26.81 on November 8, 2021. (ECF No. 17-3). The Complaint alleges Atilio Delgado used

---

[4] As with the invoice produced by MDX Corp., Plaintiff does not object and in fact encourages the Court to consider the invoices produced by Brownells in resolving the motions to dismiss. *See* ECF No. 25 at 4. Because Plaintiff refers to the transactions in her Complaint at ¶¶ 96-99 and does not dispute the authenticity of the invoices, the Court considers them merged with the pleadings. *See Alt. Energy, Inc.*, 267 F.3d at 33.

a OneVanilla pre-paid Visa gift card to make this $26.81 purchase from Brownells.com. Compl. ¶ 97. The third invoice shows Atilio Delgado purchased two products named "KCI GLOCK 9MM 33RD MAGAZINE" and "MAGTECH AMMO 9MM LUGER 115GR." for a total of $52.12 on December 15, 2021. (ECF No. 17-4). The Complaint alleges Atilio Delgado used a OneVanilla pre-paid Visa gift card to make this $52.12 purchase from Brownells.com.[5] Compl. ¶ 98. The purchases from Brownells, Inc. included handgun ammunition. Compl. ¶ 99. Through these four transactions (one with MDX Corp., three with Brownells), Atilio Delgado purchased all necessary components to build a handgun and to load it with handgun ammunition. Compl. ¶ 100.

Brownells, founded in Montezuma, Iowa in 1939, is a retail distributor of firearms, firearm parts including handgun frames, and ammunition. Compl. ¶ 9. Brownells sells "ghost gun kits." Compl. ¶ 10. During the relevant time period and to at least the date of the Complaint, Brownells had and still has instructions and videos on its website detailing how to assemble handguns from kits and components to create a complete operational handgun. Compl. ¶ 11. Brownells sells firearms, firearm parts including gun frames, and ammunition in both its physical store in Iowa and through online retail at Brownells.com. Compl. ¶ 12. Brownells uses FedEx to ship and deliver its products that are purchased online. Compl. ¶ 13. Brownells ships its products from the Grinnell Distribution Center in Grinnell, Iowa. Compl. ¶ 14. Brownells is a firearms distributor subject to federal laws and ATF regulations. Compl. ¶ 15.

In May of 2022, Mrs. Cluney learned from her children that Atilio Delgado had purchased a handgun and ammunition online and that he had the loaded handgun in his

---

[5] The OneVanilla pre-paid Visa gift cards were issued to "Cardholder," all had an expiration date of December 2028, and had the following card numbers: 4941 6050 4911 8615; 4941 6050 4622 1578; 4941 6050 0295 3743. Compl. ¶¶ 96-98.

possession in their home. Compl. ¶ 101. The Cluneys' children informed Mrs. Cluney that Alito Delgado had told them that FedEx had delivered the gun to their home. Compl. ¶ 108. Mrs. Cluney informed Mr. Cluney of this and the couple arranged to speak to Atilio Delgado about the gun. Compl. ¶ 102. Mr. Cluney spoke to Atilio Delgado and informed him that the Cluneys were not comfortable with him having a gun in the house and requested that he keep the gun in the Cluneys' locked gun cabinet or remove it from the home. Compl. ¶ 109. Atilio Delgado refused to lock up the gun or give it to Mr. Cluney. Compl. ¶ 110. The Cluneys "did not take possession of any shipment packages that they knew contained or reasonably would have known contained a handgun frame, handgun parts, or handgun ammunition." Compl. ¶ 107.

The Cluneys believed Atilio Delgado kept the gun on his person at all times and that he would bring it to school with him. Compl. ¶ 111. On multiple occasions when Atilio Delgado was out of the house, the Cluneys searched Atilio Delgado's room and belongings seeking the handgun or ammunition but did not locate any such items. Compl. ¶ 112.

On the morning of May 6, 2022, the Cluneys' daughter and Mr. Cluney got in an argument about her needing to hurry to avoid being late for school. Compl. ¶ 113. Their daughter left the house and Mrs. Cluney followed her outside. Compl. ¶ 114. Atilio Delgado took the handgun out from his pants and shot Mr. Cluney six times, killing him. Compl. ¶ 115. Mrs. Cluney heard the shots and ran outside[6] to see Atilio Delgado with the gun pointed at Mr. Cluney, who was on the ground bleeding to death. Compl. ¶ 116. Police

---

[6] The Complaint alleges Mrs. Cluney followed her daughter outside but also that she heard the gunshots from inside and then ran outside to see Atilio Delgado with the gun pointed at Mr. Cluney on the ground. Compl. ¶¶ 114, 116. The Court believes the reference to Mrs. Cluney in paragraph 114 is likely a typo and is intended to allege that *Mr.* Cluney followed his daughter outside where Atilio Delgado then shot him. The specifics of these facts ultimately are immaterial to the Court's analysis.

arrived at the scene and arrested Atilio Delgado, who is currently being held at Long Creek Youth Development Center, charged with intentional or knowing murder. Compl. ¶ 117.

## II.    LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint and requires a court to determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has pled a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When ruling on a Rule 12(b)(6) motion, a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). A complaint that offers only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, if the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570.

## III.    DISCUSSION

Moving Defendants MDX Corp. and Brownells Inc. seek dismissal of all claims. ECF Nos. 16 & 17. Their arguments for dismissal are set forth in their respective Motions to Dismiss. ECF 16 (MDX Corp.); ECF 17 (Brownells Inc.). In its motion to dismiss, MDX Corp. argues that it did not sell Atilio Delgado a "firearm" within the meaning of federal law because its parts kit did not qualify as a firearm under the legal definition at the time it was purchased. ECF No. 16. Brownells argues that it is immune from this lawsuit under the PLCAA. ECF No. 17. Brownells further argues that the Court should dismiss any claim

for punitive damages because Plaintiff does not allege conduct that rises to the level of culpability necessary to award punitive damages under Maine law. *Id.* Both Moving Defendants argue that they did not owe a duty to Plaintiff and that Atilio Delgado's criminal actions broke the chain of causation such that they are not liable. ECF Nos. 16 & 17.

## A. PLCAA Immunity

Brownells argues the Court should dismiss all of Plaintiff's claims against it because this is a "qualified civil liability action" to which no exception applies, and it is therefore immune from this action. ECF No. 16 at 6-12. Plaintiff argues that she has properly alleged causes of action that fall into two PLCAA exceptions: the exception for products sold in violation of federal law and the exception for negligence per se.

As discussed above, the definition of "qualified civil liability actions" (actions for which the PLCAA prohibits suit) excludes actions for knowing violations of "a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought . . . ." 15 U.S.C. § 7903(5)(A)(iii). Plaintiff alleges Brownells violated the GCA, 18 U.S.C. § 922(b)(1), by selling handgun ammunition[7] to an individual (Atilio Delgado) Brownells "kn[ew] or ha[d] reasonable cause to believe [was] less than . . . twenty-one years of age." 18 U.S.C. § 922(b)(1); *see* Compl. ¶ 47. Brownells argues the Complaint does not contain any factual allegations to suggest Brownells had actual knowledge or reasonable cause to believe Atilio Delgado was a minor. Plaintiff argues she can satisfy the requirement that the violation of federal law

[7] Plaintiff's Complaint alleges Brownells sold Atilio Delgado a handgun frame and receiver blanks as well as handgun ammunition and magazines. Compl. ¶¶ 46-47. In response to Brownells's motion to dismiss and attached exhibits showing Brownells sold Atilio Delgado only handgun ammunition and magazines, Plaintiff appears to abandon any allegations that Brownells sold Atilio Delgado anything other than the ammunition and magazines shown on the invoices. *See* ECF No. 25.

be "knowing" because Brownells's online purchasing system amounts to willful blindness of the age of its customers. She cites to authorities applying willful blindness to satisfy knowledge requirements in civil law. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 768 (2011); *IOT Innovations, Inc. v. SimpliSafe, Inc.*, No. 23-10352-RGS, 2023 WL 4236040, at \*1-\*2 (D. Mass. June 28, 2023).

In her opposition to Brownells's motion to dismiss, Plaintiff argues Brownells's online purchasing system does not require any age verification, does not provide any option for purchasers to input their age, and does not employ any of the age verification procedures used by other retailers of age-restricted goods such as alcohol and prescription medications. ECF No. 25 at 9-12. Plaintiff argues that these actions, taken together, amount to a "conscious course of deliberate ignorance" to satisfy the knowing violation requirement by willful blindness. Her Complaint alleges Brownells "fail[ed] to confirm that Atilio Delgado was of lawful age to purchase the products he purchased from the Brownells.com website."[8] Compl. ¶ 129. At the motion to dismiss stage, where all reasonable inferences are taken in favor of Plaintiff, the Court is satisfied that she has alleged enough factual matter to support an inference that Brownells was willfully blind to the fact that minors could and did purchase ammunition from its website. Federal law prohibits sales to those the seller knows or has reasonable cause to believe are underage, and Plaintiff alleges facts that could allow a factfinder to conclude that Brownells purposely prevented itself from gaining actual knowledge of age or reasonable cause to believe a purchaser may not be of age. *Cf. IOT Innovations, Inc.*, 2023 WL 4236040 at \*1

---

[8] Because a court generally may not consider matters beyond the complaint on a motion to dismiss, *see Alt. Energy, Inc.*, 267 F.3d at 33, the Court cannot consider Brownells's factual assertion that its website initiates a pop-up requiring a prospective purchaser of age-restricted products to represent they are of legal age before adding the products to the cart. *See* ECF No. 17 at 12 n.5.

(declining to dismiss an action for lack of required knowledge of the patent or infringement where the complaint alleged defendant willfully blinded itself by adopting a blanket policy of not reviewing patents owned by others).

Beyond satisfying the "knowing violation" requirement of the exception from the definition of "qualified civil liability action" in the PLCAA, Plaintiff must also allege enough facts to plausibly narrate that the sale proximately caused the harm for which she seeks relief. *See* 15 U.S.C. § 7903(5)(A)(iii) (the term "qualified civil liability action" does not include "an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought . . . ."). Brownells argues Plaintiff's claims must fail for lack of proximate causation because Atilio Delgado's criminal act was an "efficient intervening cause" that broke the chain of causation. ECF No. 17 at 15.

The Court, sitting in diversity, applies Maine state substantive law on causation. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). In Maine, a plaintiff bringing a negligence-based cause of action must prove proximate cause as an element of their claim. *Samaan v. St. Joseph's Hosp.*, 670 F.3d 21, 29 (1st Cir. 2012) (citing *Baker v. Farrand*, 2011 ME 91, ¶ 11, 26 A.3d 806). A negligent act proximately causes an injury when "the negligence played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the negligence." *Crowe v. Shaw*, 2000 ME 136, ¶ 10, 755 A.2d 509. Proximate cause must be "unbroken by an efficient intervening cause." *Johnson v. Carleton*, 2001 ME 12, ¶ 12, 765 A.2d 571 (quoting *Merriam v. Wanger*, 2000 ME 159, ¶ 8, 757 A.2d 778). "However, the mere occurrence of an intervening cause does not

automatically break the chain of causation stemming from the original actor's conduct. In order to break that chain, the intervening cause must also be a superseding cause, that is, neither anticipated nor reasonably foreseeable." *Ames v. DiPietro-Kay Corp.*, 617 A.2d 559, 561 (Me. 1992).

Brownells argues Plaintiff's claims fail for lack of proximate cause because its sale of magazines and ammunition "cannot possibly be said to 'reasonably be expected to result' in the murder of Mr. Cluney." ECF No. 17 at 15. Brownells further argues that, to find proximate causation here, "anytime any product that could result in harm is sold, a retailer automatically would be deemed a proximate cause if it was later used in a crime to cause harm." *Id.* The Court disagrees. Brownells argument ignores a critical allegation—that it sold ammunition willfully blind to the age of its customers. Plaintiff alleges Brownells "did not verify that Atilio Delgado was legally eligible under Federal and State law to purchase . . . handgun ammunition." Compl. ¶ 142.

As discussed above, Plaintiff has alleged sufficient facts to draw the inference that Brownells deliberately structured its online sales platform to keep it from gaining knowledge of its customers' ages or reasonable cause to believe customers may be underage. It is reasonably foreseeable that a minor coming into possession of products they are legally forbidden to buy, such as handgun ammunition, would cause harm to the minor themself or a third party. Laws preventing the sale of handgun ammunition to minors and persons under the age of twenty-one are enacted for the very purpose of preventing such harm. *See Cowart v. Kmart Corp.*, 20 S.W.3d 779, 784 (Tx. Ct. App. 2000) ("[S]tatutes regulating the sale of ammunition to minors intend to prevent injuries from the misuse of a dangerous instrumentality by those too young to appreciate the danger."); *Huddleston v. United States*, 415 U.S. 814, 824 (1974) ("The principal purpose

of the federal gun control legislation, therefore, was to c[ur]b crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.'" (quoting S. Rep. No. 1501, 90th Cong., 2d Sess., 22 (1968))). Drawing all reasonable, favorable inferences in favor of Plaintiff, the Court finds that Plaintiff has pled sufficient facts to plausibly narrate a claim for relief that is not barred by PLCAA.[9] She has plausibly alleged a knowing violation of a federal statute applicable to the sale of a qualified product and that the violation was a proximate cause of the harm. *See* 15 U.S.C. § 7903(5)(A)(iii).

### B. MDX Corp.: Definition of Firearm

MDX Corp. argues Plaintiff's claims that it was negligent for selling a minor a firearm must be dismissed because it did not sell a firearm to Atilio Delgado within the meaning of "firearm" under federal or Maine law. ECF No. 16 at 4-11. As laid out above, the GCA, in relevant part, defines "firearm" as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; [or] (B) the frame or receiver of any such weapon." 18 U.S.C. § 921(a)(3)(A)-(B). MDX Corp. argues this definition does not apply to the "Polymer80 PF940CV1 80% Textured Compact Pistol Frame Kit for Glock Gen 3 G19/23" it sold Atilio Delgado. Plaintiff disagrees.

As a matter of statutory interpretation, MDX Corp. argues that applying the "will or is designed to or may readily be converted to" language from subsection (A) to "frame

---

[9] Brownells also argues Plaintiff has not properly pled facts that plausibly narrate proximate causation because the Cluneys' own actions, specifically failing to involve law enforcement once they learned Atilio Delgado had a firearm, broke the causal chain. On a motion to dismiss, the Court must draw inferences *in favor* of the plaintiff. *See, e.g.*, *Schatz*, 669 F.3d at 55. The Court should not, and does not, draw unfavorable inferences about the reasonableness of the Cluneys' actions in not involving law enforcement in the short window between when the Cluneys learned of the firearm's presence in May of 2022, and the shooting on May 6, 2022, and whether this was enough to break the causal chain. Compl. ¶¶ 101, 113-16.

or receiver" in subsection (B) would violate the rule against superfluities and the rule that "the specific governs the general." ECF No. 16 at 5-6. MDX Corp. argues that if subsection (A) includes unfinished frames, the items included in subsection (B) would be "a mere subset of items already included in subsection (A)." *Id.* at 5.

The Court disagrees with MDX Corp.'s interpretation of the statute—and, even more importantly, so does the Supreme Court. *See VanDerStok*, 2025 WL 906503, at *11-*12. The Supreme Court recently upheld ATF's interpretation of the GCA against a facial challenge to the agency's statutory interpretations of "weapon" and "frame or receiver" ATF used in its April 26, 2022, Final Rule. *See id.* at *12. Recall ATF's Final Rule changed the regulatory definitions for "weapons" and "frame or receiver" to include unfinished parts kits. 87 Fed. Reg. at 24735, 24739 (codified at 27 C.F.R. §§ 478.11 ("firearm" includes weapon parts kits), 478.12(c) ("frame or receiver" includes frame or receiver parts kits)). In *VanDerStok*, the Supreme Court upheld the Final Rule against a pre-enforcement challenge brought by "various gun manufacturers, at-home gunsmiths, and others" who argued the GCA could not "be fairly read to reach weapon parts kits or unfinished frames or receivers." *VanDerStok*, 2025 WL 906503, at *4. Evaluating the text, context, and structure of Section 921(a)(3)(A)-(B), the Supreme Court held ATF's final rule is not facially inconsistent with the GCA and the agency may regulate at least some weapon parts kits and unfinished frames and receivers. *Id.* at *5, *9, *12.

To be sure, the transactions giving rise to Plaintiff's claims were completed before the Final Rule went into effect. However, the Supreme Court's statutory interpretation of the GCA's definition of "firearm" is still instructive here where MDX Corp. argues the statute cannot be interpreted to apply to unfinished frames. As laid out in *VanDerStok*, "the terms 'frame' and 'receiver' in subsection (B) [of Section 921(a)(3)] are artifact

nouns." *Id.* at \*10. Artifact nouns are "word[s] for [] thing[s] created by humans. Artifact nouns are typically 'characterized by an intended function,' rather than by 'some ineffable "natural essence."'" *Id.* at \*6 (quoting S. Grimm & B. Levin, *Artifact Nouns: Reference and Countability*, in 2 Proceedings of the 47th Annual Meeting of the North East Linguistic Society (NELS 47) 55 (2017)). For example, "[a] friend might speak of the *table* he just bought at IKEA, even though hours of assembly remain ahead of him." *Id.*

"Frame or receiver," as used in the GCA, encompasses at least some unfinished frames or receivers. *Id.* at \*12. While "[s]ome products may be so far from a finished frame or receiver that they cannot fairly be described using those terms," *id.* at \*11, Plaintiff has alleged MDX Corp. "sold frame and receiver blanks and parts from which a handgun can be assembled" in violation of federal law and Atilio Delgado "purchased all necessary components to build a handgun" from Moving Defendants and in fact did so, *see* Compl. ¶¶ 74, 100, 115. The record may later reveal the products Atilio Delgado purchased from MDX Corp. were not complete enough to meet the GCA definition of "firearm," but at this early stage, the Court concludes Plaintiff has pled sufficient facts to draw a reasonable inference the unfinished frame kit MDX Corp. sold to a minor was a firearm within the meaning of the GCA.[10],[11]

---

[10] MDX Corp.'s argument that ATF has a "longstanding" position that unfinished frames are not firearms does not negate this conclusion. MDX Corp. attached a January 18, 2017, ATF classification letter advising that the agency did not classify a specific unfinished frame product as a "firearm" under 18 U.S.C. § 921(a)(3). *See* ECF No. 16-2. The Court takes judicial notice of the letter because a party has requested it and supplied the Court with the necessary information, *see* Fed. R. Evid. 201(c)(2), but the letter itself does not establish whether ATF indeed has a longstanding position that the products MDX Corp. sold Atilio Delgado are not firearms within the meaning of the GCA. *Cf. VanDerStok*, 2025 WL 906503, at \*11 ("ATF's new rule seeks to regulate a greater variety of unfinished frames and receivers than the agency has in the past. But it is equally true that, for decades, the agency has consistently interpreted subsection (B) to reach some unfinished frames and receivers, including ones no more finished than Polymer80's product.").

[11] Because the Court concludes Plaintiff has sufficiently alleged MDX Corp. violated federal law by selling its frame kit to Atilio Delgado, the Court need not reach whether it also violated Maine law to resolve MDX Corp.'s motion to dismiss.

## C. Duty

Moving Defendants both argue Plaintiff's claims must be dismissed because they did not owe a duty to Mr. Cluney under Maine tort law. Plaintiff argues Moving Defendants did owe a legal duty to Mr. Cluney because his injury was foreseeable, federal law prohibits the sale of firearms to minors, and policy reasons favor imposing a duty on firearms and ammunition retailers to ensure they do not make sales to minors. *See* ECF No. 24 at 15-17.

In Maine, the existence of duty is "a legal question decided by the court." *Boivin v. Somatex, Inc.*, 2022 ME 44, ¶ 11, 279 A.3d 393 (quoting *Brown v. Delta Tau Delta*, 2015 ME 75, ¶ 9, 118 A.3d 789). When there is no "special relationship" between the parties, there is no affirmative duty to protect from the harmful actions of third parties. *Belyea v. Shiretown Motor Inn, LP*, 2010 ME 75, ¶ 9, 2 A.3d 276. The parties agree in this case there is not a special relationship between Moving Defendants and Mr. Cluney.

However, the Maine Supreme Judicial Court, sitting as the Law Court, has not completely shut the door to imposing a duty to protect when the defendant creates the danger. *See Gniadek v. Camp Sunshine at Sebago Lake, Inc.*, 2011 ME 11, ¶ 28, 11 A.3d 308. In *Gniadek v. Camp Sunshine at Sebago Lake, Inc.*, the Law Court acknowledged "the law may impose a duty to protect someone from the danger created by the defendant," and discussed the Restatement (Second) of Torts § 302B, Risk of Intentional or Criminal Conduct, but stopped short of expressly adopting the Restatement provision because the facts of that case ultimately did not implicate Section 302B. *Id.* ¶¶ 28-31. It appears to this Court that the Law Court has not yet had the opportunity to revisit whether to adopt Section 302B.

18

Even in *Belyea v. Shiretown Motor Inn, LP*, which Moving Defendants cite to for the proposition that there is no duty to protect absent a special relationship, the Law Court left open the possibility of recognizing such a duty in certain circumstances: "[I]n instances of *nonfeasance rather than misfeasance,* and absent a special relationship, the law imposes no duty to act affirmatively to protect someone from danger *unless the dangerous situation was created by the defendant.*" *Belyea*, 2010 ME 75, ¶ 9, 2 A.3d 276 (emphasis added) (quoting *Bryan R. v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 1999 ME 144, ¶ 14, 738 A.2d 839).

When deciding whether the law imposes a duty in a specific context, the Law Court looks to both factual foreseeability and considerations of public policy. *Cameron v. Pepin*, 610 A.2d 279, 282 (Me. 1992).

> In the decision of whether or not there is a duty, many factors interplay: the hand of history, our ideals of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall. In the end the court will decide whether there is a duty on the basis of the mores of the community "always keeping in mind the fact that we endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind."

*Id.* (quoting *Trusiani v. Cumberland & York Distribs., Inc.*, 538 A.2d 258, 261 (Me. 1988)). Other important policy considerations include "the necessity of avoiding both unlimited liability and liability out of all proportion to culpability." *Id.* at 283.

Here, Plaintiff alleges misfeasance in the form of Moving Defendants' sales of firearms and ammunition to a minor in violation of state and federal law, and she plausibly alleges these illegal sales created the danger. The Court has already determined, above, that the harm to Mr. Cluney was plausibly a foreseeable result from the sale of firearms and ammunition to a minor. Plaintiff alleges Moving Defendants engaged in conduct that was already illegal at the time of the transactions. Given that such conduct

is unlawful, considerations of convenience and administration of the rule, unlimited liability, and liability disproportionate to culpability do not weigh against imposing a duty here. Indeed, it would not be unjust to impose liability on retailers that fail to verify their products are not being illegally sold to minors and where the facts may later prove their entire business models are designed to willfully blind themselves to the age of their customers at the expense of public safety.

Moving Defendants cite to this Court's Order in *Baker v. Goodman* to argue they did not owe a duty to Mr. Cluney as retailers of the products Atilio Delgado later used to shoot and kill him. In *Baker*, the Court (Woodcock, J.) held that a pawnshop that sold a BB rifle to an obviously intoxicated customer had no duty to refuse to sell the customer the BB rifle nor a duty to call 911 to tell the police it had sold him a BB rifle and therefore was not liable when the Portland Police shot and killed the customer in the pawnshop's parking lot within twenty minutes of the sale. *Baker v. Goodman*, 442 F.Supp.3d 366, 369, 381 (D. Me. 2020). There, the Court determined that it would "stretch the boundaries of foreseeability to capture the possibility that in selling Mr. Baker the BB rifle, it was foreseeable that a member of the city of Portland Police Department would shoot and kill him for holding the BB rifle." *Id.* at 376. The Court's analysis in *Baker* hinged primarily on the foreseeability—or rather the unforeseeability—of the sequence of events following the pawnshop's sale of the BB rifle. *See id.* at 374-76, 379-80. Here, the foreseeability is much less attenuated than in *Baker*. As discussed above, the Court has concluded that facts supporting foreseeability have been plausibly alleged and policy considerations do not support foreclosing liability. Further, in *Baker* the Portland Police shot the purchaser, obverse with respect to the foreseeability of the facts alleged here where the minor purchaser was the alleged shooter. Further still, the product sold to Baker was non-lethal,

in contrast to the lethal products sold by Moving Defendants to Atilio Delgado. The Court does not dismiss Plaintiff's claims for lack of duty.

### D.  Proximate Causation

Moving Defendants both argue Plaintiff's claims must be dismissed because she has failed to plead sufficient facts to support a finding of proximate cause. The Court has already addressed and rejected Brownells's arguments on proximate cause regarding the PLCAA arguments in Section III.A of this Order. MDX Corp. makes substantially the same argument as Brownells, that intentional criminal conduct breaks the chain of causation. *See* ECF No. 16 at 12-14. The same reasoning for rejection of this argument applies here, but the Court briefly addresses one case MDX Corp. argues is analogous to the present facts.

In *Cowart v. Kmart Corp.*, the Court of Appeals of Texas held that the plaintiff had not produced enough evidence of foreseeability on summary judgment where Kmart sold ammunition to a minor that was later used to shoot and kill the plaintiff by a third party to the purchase. *Cowart*, 20 S.W.3d at 782, 786. The Court finds this case is distinguishable because the intervening action was taken by a third party to the transaction, weakening the foreseeability to the defendant at the time of the sale to a minor. *See also Baker*, 442 F.Supp.3d at 379-81 (finding no duty where *third-party* killing of firearm purchaser negated foreseeability). Here, there is no such third-party actor, rather, the very minor that Defendants sold restricted products to later used those products in a foreseeable manner. Plaintiff has alleged enough facts to support an inference of foreseeability, and thus proximate causation, to survive Moving Defendants' motions at this early stage.

### E.  Punitive Damages

Brownells argues the Court should dismiss Plaintiff's claims for punitive damages because she has not pled facts that, if proven, would support a punitive damages award under Maine law. In Maine, "[p]unitive damages are available if the plaintiff can establish by clear and convincing evidence that the defendant's conduct was motivated by actual ill will or was so outrageous that malice is implied." *Roussel v. Ashby*, 2015 ME 43, ¶ 8, 114 A.3d 670 (quoting *Laux v. Harrington*, 2012 ME 18, ¶ 35, 38 A.3d 318) (quotation marks omitted).

The Court first notes that punitive damages are a form of remedy available for sufficiently malicious tortious conduct, *see DiPietro v. Boynton*, 628 A.2d 1019, 1025 (Me. 1993) (punitive damages are only available when the plaintiff receives compensatory damages for underlying tortious conduct), and not a standalone cause of action, *S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 64 (1st Cir. 2000) ("Punitive damages, however, do not constitute a separate cause of action, but instead form a *remedy* available for some tortious or otherwise unlawful acts."). Where Plaintiff's claims have otherwise withstood these motions to dismiss, the Court will not foreclose at this stage Plaintiff's ability to seek punitive damages. *Cf. Rocque v. Zetty, LLC*, 456 F.Supp.3d 257, 267-68 (D. Me. 2020) (deferring ruling on availability of punitive damages until after trial where tort claims for which punitive damages could be available remained to be tried); *Smith v. Coyne*, No. CV-03-405, 2004 WL 1433638, at *5 (Me. Super. Ct. Apr. 12, 2004) (denying a motion to dismiss punitive damages where plaintiff alleged defendants willfully failed to disclose important information in a real estate transaction).

## IV.    CONCLUSION

For the reasons discussed above, the Court determines Plaintiff has adequately stated claims for relief and therefore the Court **DENIES** Defendants' Motions to Dismiss

(ECF 16 & 17). Unless ordered otherwise, Moving Defendants shall file their Answers within twenty-one days of this order.

**SO ORDERED.**

Dated this 4th day of April, 2025.

/s/ STACEY D. NEUMANN
**UNITED STATES DISTRICT JUDGE**