UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| BILLI-JO CLUNEY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:24-cv-00207-SDN |
| | ) | |
| BROWNELLS, INC., et al., | ) | |
| | ) | |
| Defendants | ) | |

### RECOMMENDED DECISION ON PLAINTIFF'S
### MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiff seeks leave of Court to file an amended complaint under Rule 15(a)(2). (Motion to Amend, ECF No. 46.) Defendants Brownells, Inc. and MDX Corp. oppose the motion. (Brownells's Opp'n, ECF No. 47; MDX's Opp'n, ECF No. 48.)

After hearing and consideration of the parties' arguments, I recommend the Court grant the motion in part and deny the motion in part.[1]

### BACKGROUND

Plaintiff commenced this action in state court in April 2024; Defendant FedEx Corporate Services, Inc. subsequently removed to federal court in June 2024. (Notice of

---

[1] There is First Circuit authority suggesting that a magistrate judge can rule on a motion to amend a complaint, even when the ruling involves the denial of a plaintiff's request to add a claim. *See Maurice v. State Farm Auto. Ins. Co.*, 235 F.3d 7, 9 n.2 (1st Cir. 2000). However, some courts, including in this district, have determined that when a ruling on a motion to amend effectively ends a claim, the matter is more appropriately considered a dispositive motion subject to de novo review. *See, e.g., Sargent v. NorDx*, No. 2:20-cv-00467-JAW, 2022 WL 17738711, at *1 (D. Me. Dec. 16, 2022); *Allendale Mut. Ins. Co. v. Rutherford*, 178 F.R.D. 1, 2 (D. Me. 1998). Because I have determined that the denial of Plaintiff's request to allege a new claim is appropriate, to avoid any dispute as to the standard that would govern any review of my assessment, I issue a recommended decision.

Removal, ECF No. 1.)  Plaintiff's original complaint named three defendants—Brownells, MDX, and FedEx Corporate Services, Inc.—and set forth 18 separate counts seeking money damages against Defendants for their alleged role in the chain of events that resulted in the death of Plaintiff's husband, James Cluney.  (*Id.*)

Brownells and MDX each moved to dismiss the complaint under Rule 12(b)(6). (Motions, ECF Nos. 16 and 17.)  The Court denied the motions, (Order, ECF No. 33), and then issued a scheduling order designating July 14, 2025, as the deadline for the amendment of pleadings. (Scheduling Order, ECF No. 40.)

On July 3, 2025, Plaintiff filed an amended complaint.  Because the time to amend as a matter of course had expired and because Plaintiff had neither obtained leave of Court nor represented that she obtained Defendants' consent to the amendment, the Court struck that entry.  (Order, ECF No. 45.)  Plaintiff then filed a motion for leave to amend the complaint to add factual allegations, to assert the law applicable to certain claims (e.g., the punitive damages claims), and to assert additional claims against the defendants, all related to the facts alleged in the original complaint.

In the order denying the motions to dismiss, the Court described the factual background derived from the original complaint.  The allegations in the proposed amended complaint largely mirror, and supplement, the facts alleged in the original complaint.  The factual background set forth in the order on the motions to dismiss is incorporated here by reference.  To the extent that the proposed amended complaint includes additional factual allegations pertinent to the analysis, the allegations are discussed below.

## THE PARTIES' POSITIONS

Plaintiff maintains that the amended complaint would (a) substitute Federal Express Corporation (FedEx) for FedEx Corporate Services, Inc., and (b) clarify that she seeks punitive damages against MDX under California law and against FedEx and Brownells under Iowa law. The proposed amended complaint also sets forth additional counts, including a count seeking relief against Brownells for alleged mail fraud in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. (Proposed Amended Complaint at 120-23, ECF No. 46-1.)

Brownells contends that leave to amend should be denied as futile because Plaintiff lacks standing to allege, and has not plausibly alleged, a RICO violation. (Brownells's Opp'n at 3-6.) Brownells further asserts that the proposed amended complaint contains false factual allegations and was filed in bad faith. (*Id.* at 8-10.) MDX argues the amendment would be futile because the proposed amended complaint would not support a punitive damages award under California law as to MDX. (MDX's Opp'n at 3-4.)

Plaintiff contends that the proposed amended complaint sufficiently alleges a RICO claim for which she has standing. Plaintiff also argues that California law applies to her punitive damages claim against MDX because the wrongful conduct of MDX occurred in California, where MDX marketed its products, made them available for sale and distribution online, packaged and shipped them, and where MDX completed and processed the transaction at issue in this case. (Pl's Reply at 3, ECF No. 49.) As such, Plaintiff maintains MDX should be punished "under the tenor of punitive damages" pursuant to California law, rather than Maine law. (*Id.* at 4.)

3

## LEGAL STANDARD

When a party seeks to amend a complaint more than 21 days after the filing of a responsive pleading, the complaint may be amended only with the opposing party's consent or the court's leave. Fed. R. Civ. P. 15(a)(2). In such a case, the court is to grant leave to amend "freely" when "justice so requires." *Id.*

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182 (1962). The grant or denial of leave to amend is within the court's discretion, but leave may not be denied without justification. *Id.*

"[I]f the proposed amendment would be futile because, as thus amended, the complaint . . . fails to state a claim, the district court acts within its discretion in denying the motion to amend." *Bos. & Me. Corp. v. Town of Hampton,* 987 F.2d 855, 868 (1st Cir. 1993), *overruled on other grounds by Ecuadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61 (1st Cir. 2004). When evaluating a proposed amendment for futility, the court uses the standard of sufficiency applicable to a motion under Federal Rule of Civil Procedure 12(b)(6). *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). The court must accept the truth of the well-pleaded factual allegations. *See Strahan v. McNamara*, No. 22-cv-391-SM-TSM, 2023 WL 5237915, at *1 (D.N.H. Aug. 15, 2023). And "the complaint as amended 'must set forth facts sufficient to state a legal claim on which relief could be granted.'" *OfficeMax Inc. v. Cnty. Qwik Print, Inc.*, 802 F. Supp. 2d

271, 284 (D. Me. 2011) (quoting *Giragosian v. Bettencourt*, 614 F.3d 25, 28-29 (1st Cir. 2010)). If the proposed amendment "does not 'set forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory[,]'" then the proposed amendment is futile, and leave to amend may properly be denied. *Xtinction v. Comm'r of Me. Dep't of Marine Res.*, No. 1:19-cv-00406-LEW, 2020 WL 3977942, at *1 (D. Me. July 14, 2020) (quoting *Hatch v. Dep't for Children, Youth & Families*, 274 F.3d 12, 19 (1st Cir. 2001)).

A showing of bad faith by the movant may also justify denial of leave to amend. *See Foman*, 371 U.S. at 182. In this context, bad faith "means acting with intent to deceive, harass, mislead, delay, or disrupt." *Wizards of the Coast LLC v. Cryptozoic Ent. LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015).

## DISCUSSION

**A.     RICO Claim Against Brownells**

RICO provides a private cause of action for treble damages and costs for "[a]ny person injured in his business or property by reason of a violation of section 1962" of the RICO statute. 18 U.S.C. § 1964(c). Section 1962, which contains the criminal provisions of the law, makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c). Racketeering activity includes mail fraud (as defined by 18 U.S.C. § 1341), 18 U.S.C. § 1961, and mail fraud includes, among other acts, devising or "intending to devise any scheme or artifice to defraud,"

through use of the mail. 18 U.S.C. § 1341. "The upshot is that RICO provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable as mail fraud." *Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 647 (2008).

Through the proposed amended complaint, Plaintiff asserts that Brownells engaged in a scheme to perpetrate mail fraud by shipping packages of handgun ammunition and parts through FedEx and taking certain steps to avoid compliance with state and federal law regulating the shipment of handgun parts and ammunition. (Proposed Amended Complaint ¶¶ 677–90.) In support of her claim, Plaintiff alleges the following, which allegations the Court must accept as true when assessing Brownells's futility argument:

Brownells has a corporate account with FedEx to ship its products as a registered Federal Firearms Licensed (FFL) dealer. (*Id.* ¶ 24.) Brownells also ships some of its products, including ammunition, though FedEx using a non-FFL affiliated account, and sends them from a location not owned by Brownells without indicating that the products originate from Brownells or contain ammunition. (*Id.* ¶¶ 25-39.) Brownells uses this non-FFL affiliated account and location to circumvent FedEx's dangerous goods delivery policies that require verification upon delivery that the recipient is at least 21 years of age. (*Id.* ¶¶ 42-46.) The FedEx policies are designed to ensure compliance with federal and state laws regulating the sale and transport of ammunition, including 18 U.S.C. §§ 922(b)(1), (e), and (f), 49 C.F.R. §§ 172.315 and 173.63, and 17-A M.R.S.A. § 554-B. (*See* Proposed Amended Complaint ¶¶ 42-44, 59, 69-76, 93-95, 101-06, 113, 161-62.)

Plaintiff asserts that as the result of this alleged scheme, a minor was able to order from Brownells and receive from FedEx—without any age verification—handgun ammunition and parts, which the minor used to cause Mr. Cluney's death and Plaintiff's resulting injury. (*See id.* ¶¶ 149, 161-76, 184, 195-201, 210-11, 220-34, 268-69.) According to Plaintiff, the injury and damages resulting from the alleged mail fraud include an economic loss, specifically the loss of Mr. Cluney's monthly social security disability benefits and the family's compromised ability to maintain the family home and property. (*Id.* ¶ 691.)

**B.    Sufficiency of the RICO Claim Allegations**

To state a private cause of action for violation of § 1962(c), a plaintiff must allege that (i) a person associated with or employed by an enterprise has (ii) conducted or participated in the conduct of the enterprise's affairs (iii) through a pattern (iv) of racketeering activity, and (v) an injury to the plaintiff's business or property proximately caused by the conduct constituting the violation. *See* 18 U.S.C. §§ 1962(c), 1964(c). The allegations in the proposed amended complaint are insufficient in several respects.

First, the proposed amended complaint does not identify a RICO person, distinct from the alleged RICO enterprise. "'To establish liability under § 1962(c) one must allege . . . the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name.'" *Kia Am., Inc., v DMO Auto Acquisitions, LLC*, 775 F. Supp. 3d 607, 622 (D.N.H. 2025) (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)). "'This is because Section 1962(c) seeks to punish the culpable person who misuses the enterprise.'" *Id.* (quoting *Deane v.*

7

*Weyerhaeuser Mortg. Co.*, 967 F. Supp. 30, 33 (D. Mass. 1997)). Notably, "[t]he enterprise, the criminal tool, is not liable and cannot be a defendant in a RICO action." *Bessette v. Avco Fin. Servs., Inc.*, 279 B.R. 442, 453 (D.R.I. 2002) (citing *Odishelidze v. Aetna Life & Cas. Co.*, 853 F.2d 21, 23 (1st Cir. 1988)). In this case, even if Brownells could be considered an enterprise, Plaintiff has not alleged a claim against a distinct "person" as required by the statute. *Cf. Kia Am., Inc.*, 775 F. Supp. 3d at 623 (concluding that Kia had plausibly alleged RICO persons, distinct from a RICO enterprise, where Kia sued a collection of current and former car dealerships and executives, alleging that they together formed a RICO enterprise and engaged in a fraudulent scheme).

Second, the injury alleged by Plaintiff—loss of Mr. Cluney's monthly social security disability benefits and an unspecified impact on the family's ability to maintain their home and property—does not qualify as an injury to Plaintiff's business or property within the meaning of the statute.[2] For purposes of § 1964(c), a "plaintiff has been 'injured in [her] business or property' if [her] business or property has been damaged or hurt." *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 601 (2025). Here, Plaintiff does not allege any compensable injuries to her business or to her property. Plaintiff's alleged loss of Mr.

---

[2] Some courts have discussed the injury and causation elements of a RICO claim in the context of standing. *See, e.g., Nodine v. Textron, Inc.*, 819 F.2d 347, 348 (1st Cir. 1987) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) for the proposition that injury and causation are questions of RICO standing); *Portfolio Inv. LLC v. First Sav. Bank Nw.*, 583 Fed. Appx. 814, 816 (9th Cir. 2014) (describing injury and causation as elements of statutory standing under RICO). In some circumstances, "the issue of standing and 'the merits' substantially overlap." *Town of Norwood v. FERC*, 202 F.3d 392, 406 (1st Cir. 2000). In this case, I evaluate whether Plaintiff has alleged sufficient facts to support findings of injury and causation under RICO. Ultimately, whether the issues are assessed as a standing argument or as a challenge to the sufficiency of Plaintiff's allegations, the result is the same.

Cluney's anticipated social security disability benefits is a loss of benefits that do not belong to Plaintiff. Further, the alleged impact of Mr. Cluney's death on the family's ability to maintain their home and property, which impact is evidently in part based on Mr. Cluney's non-monetary contributions to the home, does not qualify, as Mr. Cluney's non-monetary contributions do not constitute a business or property loss. To the extent the allegation references the loss of cash flow for the Cluney family due to the loss of Mr. Cluney's social security disability benefits, Plaintiff again cannot recover as those benefits belonged to Mr. Cluney, not Plaintiff. In sum, the allegations would not support a finding that Plaintiff has suffered compensable damages under RICO.

Third, Plaintiff has not alleged facts that would support a finding that the claimed injury was proximately caused by the alleged mail fraud. In § 1964(c), the phrase "by reason of" requires a "direct relation between the injury asserted and the injurious conduct alleged." *Med. Marijuana, Inc.*, 604 U.S. at 612 (quotation marks and citation omitted). "The key word is direct; foreseeability does not cut it. Rather, whenever the plaintiff's theory of causation requires moving well beyond the first step, it cannot meet RICO's direct relationship requirement." *Id.* (quotation marks and citations omitted).

The Supreme Court's analysis in *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010), illustrates the causal proof necessary to sustain a civil RICO claim. In the case, the City of New York alleged that Hemi Group, an out of state cigarette retailer, committed fraud by selling cigarettes to residents of the city and neglecting to submit information regarding its customers to the State, as required by federal law. *Id.* at 9. In the absence of reports from Hemi, the State was unable to share Hemi's customer information with the

9

City, and the City was unable to collect cigarette taxes from Hemi's customers. *Id.* The City alleged an injury consisting of tens of millions of dollars of unrecovered cigarette taxes. *Id.* at 4. The Supreme Court concluded that because the alleged fraud (Hemi's failure to provide customer information to the State) was distinct from the conduct that directly caused the alleged harm (the customers' failure to pay their taxes), the plaintiff could not prove causation. *Id.* at 10-11.

In addition to the disconnect between the harm-causing action and the action comprising the fraud, the Court in *Hemi Group* noted that the two actions had been carried out by separate parties. *Id.* at 11. The Court declined to "extend RICO liability to situations where the defendant's fraud on the third party (the State) has made it easier for a *fourth* party (the taxpayer) to cause harm to the plaintiff (the City)." *Id.* Indeed, the Court observed, "the fourth-party taxpayers . . . only caused harm to the City . . . if they decided not to pay taxes they were legally obligated to pay." *Id.* Although the harm to the City might have been a foreseeable consequence of Hemi's failure to provide customer information to the State, causation for RICO purposes focuses "on the directness of the relationship between the conduct and the harm." *Id.* at 12. Because the City's theory of liability was predicated on the independent actions of others, and multiple steps separated the alleged fraud from the asserted injury, proximate cause was lacking. *Id.* at 15.

A similar analysis applies here. The alleged mail fraud (Brownells's alleged efforts to conceal from FedEx the origination and contents of packages containing handgun parts and ammunition so that FedEx would not require an adult to sign for delivery) is distinct from the conduct (a minor's use of a gun) that directly caused the alleged harm. *See also*

10

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006) (rejecting theory of proximate cause on appeal arising from motion to dismiss where the cause of plaintiff's asserted harms was a set of actions entirely distinct from the alleged RICO violation).  Furthermore, as in *Hemi Group*, the two actions were carried out by separate parties.  The alleged fraud in this case was perpetrated on someone other than Plaintiff (*i.e.*, FedEx).

Plaintiff contends that the proposed amended complaint sufficiently alleges causation because "it is foreseeable, if not inevitable, that ammunition . . . illegally sold to a minor, will be used" to "stop a human life."  (Pl's Reply at 7.)  Proximate cause in this context, however, requires a direct relationship between the injurious conduct alleged and the injury asserted.  *See Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992).  Plaintiff's contention that it is sufficient to plead that it was foreseeable or inevitable that the alleged mail fraud would result in Mr. Cluney's death and the loss of his income is unconvincing.

"When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."  *Anza*, 547 U.S. at 461.  In this case, Plaintiff's allegations are insufficient.  The relationship between the alleged mail fraud and the claimed injury (*i.e.*, the loss of Mr. Cluney's income) cannot reasonably be viewed as a direct relationship.  There are too many steps and actors in the causal chain to satisfy § 1964(c)'s proximate cause requirement.

Because Plaintiff's proposed amended complaint lacks sufficient factual allegations to assert an actionable RICO claim, the proposed amendment to add a RICO claim is futile.[3]

## C. Choice of Law as to Counts Seeking Punitive Damages Against MDX

Plaintiff and MDX disagree regarding the law that applies to Plaintiff's punitive damages claims against MDX. Plaintiff contends California law applies; MDX argues Maine law applies.

"The first step in a choice of law analysis is to determine whether an actual conflict exists between the substantive laws of the interested jurisdictions[.]" *Reicher v. Berkshire Life Ins. Co. of Am.*, 360 F.3d 1, 4 (1st Cir. 2004). In California, punitive damages may not be recovered in a wrongful death action, *Boeken v. Philip Morris USA, Inc.*, 230 P.3d 342, 347 (Cal. 2010), unless the death was a homicide that resulted in the defendant's conviction of a felony, *Shore v. Gurnett*, 122 Cal. App. 4th 166, 175 (Cal. Ct. App. 2004) (discussing California Legislature's enactment of California Civil Code § 3294(d) in 1982). In Maine, punitive damages in a wrongful death action are available, but presently capped at $500,000. 18-C M.R.S.A. § 2-807(2) (2023). In 2022, when Mr. Cluney died, the punitive damages cap under Maine's wrongful death statute was set at $250,000. *See* 18-

---

[3] Because I conclude that Plaintiff's proposed amendment to add a RICO claim would be futile, I do not reach Brownells's bad faith argument. If the Court were to reach the issue, based on the parties' arguments, resolution of the issue would likely require a factfinding effort, which is typically not conducted in connection with a motion to amend. *Cf. Cathedral Art Metal Co. v. Giftco, Inc.*, C.A. No. 06-465S, 2010 WL 936219, at *2 (D.R.I. Mar. 12, 2010) (observing, in assessing futility argument, that "it is not appropriate for the Court to resolve factual disputes and make findings of fact in the context of a Motion to Amend under Rule 15").

C M.R.S.A. § 2-807(2) (2019) (amended 2023). At least as to the availability of punitive damages in a wrongful death action, there appears to be a significant conflict between California law and Maine law.

The next step in the choice of law analysis involves selecting which state's law should apply to the punitive damages claims against MDX. When, as here, subject matter jurisdiction is based on diversity of citizenship between the parties, the substantive rules of decision, including conflict of law principles, are derived from the law of the forum state. *Butler v. Balolia*, 736 F.3d 609, 612 (1st Cir. 2013).

Under Maine law, choice of law principles in a tort action are informed by the Restatement (Second) Conflict of Laws §§ 145 and 146. *State Farm Mut. Auto. Ins. Co. v. Koshy*, 995 A.2d 651, 660 (Me. 2010). In pertinent part, § 146 provides as follows:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) Conflict of Laws § 146 (1971). In determining the law applicable to an issue in tort, contacts to be considered include: (a) the location of the injury; (b) the location of the conduct that caused the injury; (c) the domicile, residence, place of incorporation, and place of business of the parties; and (d) "the place where the relationship, if any, between the parties is centered." *Id.* § 145.

In its answer to the original complaint, MDX admitted that it is a business organized under California law with a principal place of business in Riverside, California. (MDX Answer ¶ 4, ECF No. 36.) MDX denied nearly all other allegations. At this stage, one

13

cannot meaningfully evaluate the other contacts that inform the choice of law analysis. As such, the determination of which state's law governs Plaintiff's request for punitive damages against MDX is best deferred for resolution at a later stage, when the evidentiary record is better developed. *Cf. HDI-Gerling Am. Ins. Co. v. Navigators Ins. Co.*, No. 15-10338-FDS, 2015 WL 5315190, at *5 (D. Mass. Sept. 11, 2015) (deferring resolution of choice-of-law issue in insurance action where the pleadings alone did not provide enough information for the court to determine the "principal location of the insured risk during the term of the policy"); *see also Ricci v. Delta Air Lines, Inc.*, 769 F. Supp. 3d 57, 64 (D. Mass. 2025) (recognizing that "early-stage choice-of-law determinations are not common events in civil sessions of federal court"). Leave to amend the complaint as proposed by Plaintiff, therefore, should not be construed as a determination as to which law applies to Plaintiff's punitive damages claims.

## CONCLUSION

After consideration of the parties' arguments, for the reasons explained above, I recommend the Court grant the motion to amend in part and deny the motion in part. I recommend the Court permit Plaintiff to amend the complaint to name the proper FedEx party as a defendant and to amend the complaint as proposed subject to the following exceptions. I recommend the Court (a) deny Plaintiff's request to amend the complaint to add the unfair trade practices claims against Brownells (Counts 19, 21, and 24 of the proposed amended complaint) that she agreed to remove from the proposed amended complaint (*see* Pl's Reply at 7), (b) deny Plaintiff's request to add a RICO claim against Brownells, (c) deny the request to determine at this stage of the proceedings the law that

would govern Plaintiff's punitive damages claims, and (d) deny Brownells's request for attorney fees.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 25th day of November, 2025.